1 470
84 218

## PIERCE vs. MINTURN et al.

An answer is a waiver of a demurrer previously interposed.

Where the parties have not made a case, nor a bill of exceptions, but have relied upon the testimony taken down by the clerk pursuant to sec. 271 of the Practice Act of 1850, no question can be raised, on appeal, respecting the decisions of the court below during the progress of the trial. The case of *Gunter et al.* v. *Geary et al.* (*ante, p.* 462.) affirmed in this respect.

Where it is clear that two or more defendants are not *jointly* liable, a *joint* judgment against both cannot be sustained, although each may be *severally* liable; so *held*, in an action by a lessor against two sub-tenants of his lessee, when it appeared that the sub-tenants did not occupy any portion of the premises *jointly*.

A *sub-tenant* can be made liable to the original lessor in an action for use and occupation, or for rent, only for the time during which the *occupancy* of the premises by the *sub-tenant* continued.

A description of premises in a lease, though imperfect, is sufficiently certain, if the boundaries of the premises can be ascertained with a reasonable degree of certainty, and they have been taken possession of and occupied under the lease.

A person who enters into possession of land under another, cannot question the title of him under whom he holds.

APPEAL from the superior court of the city of San Francisco, where judgment was rendered in favor of the plaintiff. The facts are stated in the opinion of the court.

*S. Heydenfeldt*, for the plaintiff.

*Allen T. Wilson*, for the defendants.

*By the Court*, BENNETT, J. Thompson leased certain premises to Fraener—the latter sub-let a portion thereof to Minturn—and, at the time of bringing suit, Nelson was in the actual possession of such portion of the premises as had been sub-let to Minturn, he having been put in possession thereof by Minturn. Thompson sold his interest in the lease to the plaintiff. The rent which Fraener agreed to pay was six thousand dollars a year, at the end of each year, and there was a covenant contained in his lease, that the lessor should have the right *without previous notice or demand to enter* upon the premises and expel

Pierce *v.* Minturn.

and eject the lessee therefrom, if the rent should remain unpaid for the space of fifteen days after it had become due. The lease bore date the 24th day of August 1849, and the first year's rent became due on the 24th day of August 1850, but was not paid. On the 9th day of September 1850, notice in writing was given that the plaintiff should treat the lease as forfeited for the non-payment of rent, and that he demanded the possession of the premises to be given up to him. The action is brought to recover possession of the premises, and the rents and profits thereof from the time of the forfeiture of Fraener's lease. There is no judgment for the recovery of possession, but a *joint* judgment against the defendants Minturn and Nelson for the monthly value of the premises from the time of the forfeiture.

The defendants demurred to the complaint on the ground of defects therein in substance. The demurrer was overruled, and the defendants answered. It has been decided several times that an answer was a waiver of a demurrer previously interposed. Those decisions dispose of the point urged on the argument, that the demurrer should have been sustained.

There is no statement of facts or of the testimony at the trial made out according to the provisions of section 272 of the Practice Act of 1850, and no bill of exceptions pursuant to the requirements of sections 287, 288, and 289; but only a meagre statement of the testimony taken by the clerk at the trial under section 271. It has been held at this term of the court, that no question can be raised respecting the decisions of the court below during the progress of the trial, upon the testimony, objections and exceptions as taken down by the clerk. That decision disposes of most of the points argued by counsel, and leaves us at liberty to pass upon the substantial legal rights of the parties, without being obstructed by technicalities. And looking at the legal merits of the case I think the judgment should be reversed.

The defendants are sued jointly, and a joint judgment is rendered against them, without its appearing, even on the face of

the complaint, that there is any joint liability. On the contrary, it is clear, from the complaint, that there was no joint liability. Neither of the defendants can be made liable to the plaintiff, save by reason of having occupied the premises, and then only for the time during which such occupancy continued. It is not claimed that they occupied the premises jointly, and consequently there can be no joint judgment against them. If they occupied different portions of the lot, they ought not to have been joined, and if joined, judgment ought not to have been rendered against *both*. And there is as little reason to support the judgment against them, in case each occupied the same portion of the lot, but at different times. It does not appear from the complaint or the testimony, whether Nelson was the assignee, under-tenant, or agent of Minturn, and, whether he were the one or the other, I know of no rule of law by which a *joint* action against both can be sustained.

The description of the premises in the lease from Thompson to Fraener, though imperfect, is sufficiently certain, especially as the premises in question were taken possession of, and occupied under the lease.

Fraener having leased of Thompson, and the defendants claiming under Fraener, they cannot dispute the title of Thompson. A person who enters into possession of land under another cannot question the title of the one from whom he claims his right.

But a new trial must be granted on the ground that a *joint* judgment against the defendants cannot be supported.

New trial granted, costs to abide the event.

A motion was made for a re-argument, which was granted— the cause was re-argued—and the opinion of the court on the second hearing was as follows :—

*By the Court*, BENNETT, J. I think the former decision of the court should stand. The only authority cited by the counsel for the plaintiff on the re-argument, which bears upon the

case, is that of *Doe* v. *Harlow, Kelly, and Warren.* (12 *Adolph. & Ellis,* 40; 40 *E. C. L. Rep.,* 17, *S. C.*) That was an action for *mesne* profits. In that case Warren had held the premises under Kelly by a lease which expired in Midsummer, 1834, during the continuance of which lease Warren underlet to Harlow. Harlow continued to occupy after the expiration of the lease, and during the period for which *mesne* profits were claimed. Warren had said that Harlow paid him rent, and was his tenant; and that he himself held under an agreement with Kelly. Harlow likewise alleged Kelly's title. An action of ejectment had been brought by the original landlords to recover possession, and Kelly defended. For the defendant Warren it was objected that, not having been in the actual possession during the time mentioned in the declaration, he could not be liable in the action. But the chief justice thought there was some evidence as to Warren, and left it to the jury to say how long the three defendants had been jointly keeping out the rightful proprietors; and the jury found against all the defendants. On a motion for a new trial, it was urged on behalf of Warren that he was not in possession when the *mesne* profits were taken. But the court answered that Harlow, who was in the actual possession, was the tenant of Warren. " He encouraged Harlow " to remain," said the chief justice, " and received rent from " him." And in answer to the question put by Lord Mansfield in *Burn* v. *Richardson,* (4 *Taunt.* 720,) and again advanced by the defendants' counsel, " Must not the defendant in an action " for *mesne* profits be the person in actual possession, and tres- " passing?" Lord Denman replied by asking the question, " If " he has put another person in as tenant, and tells him to stay " in, is he not a trespasser by the tenant?" Littledale, J. said it was clear that he was; and Lord Denman, in closing the case, remarked: " *If there had been no evidence here, but that the* " *under tenant remained in possession, I should have left the* " *case differently.*"

The case supposed by Lord Denman, in his concluding re-mark, is more nearly analogous to the case at bar, than to the cause itself in which the remark was made. All the defendants

in *Doe* v. *Harlow et al.*, were held liable, not because Kelly, the first lessee, *had delivered* the possession to Warren, and the latter to Harlow, but because the relation of landlord and tenant continued to subsist between Harlow and Warren, and also between Warren and Kelly; so that Warren, in the language of the Lord Chief Justice, encouraged Harlow to remain, and received rent from him. And here it should be remarked, that no question could arise in that case as to the liability of Kelly. The action of ejectment was conclusive on that point as to him. The only principle which can be extracted from that case, may be stated in the following way:—A. being in the possession of land to which he has no right, leases to B. and receives rent from him, and B. sub-lets to C. and receives rent from him,—all of them acknowledging the mutual relation subsisting between them, and relying upon it for the protection and support of their respective claims; while, at the same time, A. is claiming an interest in the premises, and holding B. liable to him, and B. is receiving rent from C., and encouraging him to remain. It may, perhaps, be said in such a case, that they are liable as joint trespassers. But had A. *delivered the possession* to B., and B. had *delivered the possession* to C., and no other or different connection between A. B. and C. could be made out, then within the very remark of Lord Denman in the case cited, no joint action could be maintained.

That is the case now before us. Fraener, who was himself a lessee, leased to Minturn. It is not alleged in the complaint, nor is it shown by the proof, that Minturn ever took possession of the premises, or received the rents and profits thereof, either in person or by another as sub-tenant or agent, but it is simply charged in the complaint that he *delivered the possession* to Nelson. It is not alleged, nor does it any where appear, that Minturn received any rent from Nelson, or encouraged him to remain in the possession. It is not shown either by the pleadings or proofs whether Nelson was assignee, sub-tenant, or agent of Minturn; neither is it shown, whether he received the rents and profits of the premises for one day or one month. One thing, however, is clear, that he was not in possession at the time suit

was brought, for there is no judgment in favor of the plaintiff for the recovery of possession. Neither does it appear at what time Minturn *delivered the possession* to Nelson, nor whether it was before or after the alleged forfeiture of Fraener's leasehold interest. Had Minturn occupied the premises for a certain period after the forfeiture, and then *delivered the possession* to Nelson, could any one suppose that Nelson was liable for the rents and profits during the whole time which had elapsed after the forfeiture? I cannot. Does any one suppose that the assignor of a leasehold estate, who has parted with his whole interest therein, is liable for the rents and profits of the premises after the assignment, from the single fact that his assignee has continued to occupy them? I do not. And although it is impossible to say what was the relation existing between Minturn and Nelson, for the pleadings and proofs do not disclose it, yet if I were to frame a conjecture, I should say that, in all probability, Nelson was the assignee of Minturn; and if this be so, I do not see how they can be jointly liable.

My views have not been changed by the re-argument, and I think the judgment heretofore rendered should not be disturbed.

Ordered accordingly.