Bevier vs. Dillingham et al.

---

## BEVIER VS. DILLINGHAM and others.

An action under the Mill Dam Law to recover damages for the flowage of land, is to be regarded as a legal and not as an equitable action.

Whether or not, in case it appeared from a *verified* answer in such an action that there was a defect of parties defendant, it would be the duty of the *plaintiff*, under chap: 60, Laws of 1863, to ask the court for an order adding the proper parties (a point not decided), such a motion is not required of him where the defect is not made apparent by a *verified* answer, or a separate *affidavit* of the fact.

Where a defendant merely alleges in his answer facts which show that some other person should be joined as a defendant, but does not ask to have him so joined, nor object to the further prosecution of the suit on account of the non-joinder, he cannot afterwards object to a judgment against himself in the action on the ground of such non-joinder.

The remedy given by the Mill Dam Law of 1857 is not limited to cases in which the flowage of land is caused by dams erected *after* the law took effect.

In an action for damages under the Mill Dam Law, where the lands had been flowed

for fifteen years, it was not error for the court to refuse to instruct the jury that " the measure of damages for the three years previous to the commencement of these proceedings, was the amount of what would have been the net value of the products of the premises during that time and up to the time of the verdict, if the water had been drawn off the premises at the commencement of the three years, and remained off, taking into consideration the state of the land after having been flowed for twelve years; and not what would have been the net product of the land if it never had been flowed."

Nor was it error, in such a case, for the court to refuse to instruct the jury, either that the measure of the gross future damages was "the value of the land if the water should be drawn off and kept off from that time, taking into consideration that it had been flowed for some fifteen years;" or that the measure of the future yearly damages was "what would be the net yearly product of the land, considering its condition after having been so long flowed."

APPEAL from the Circuit Court for *Sheboygan* County.

This action was brought in 1863, against *Stephen Dillingham*, *James T. Dillingham* and *Joseph Swift*, to recover damages for the flowage of the plaintiff's land by a mill dam alleged to have been maintained by them during the three years preceding, and also compensation for the right to flow in future, &c. The defendants, by their answer, first deny most of the material allegations of the complaint; secondly, they allege that the dam had been maintained at the same height since 1847, when it was erected "under the authority of the law then existing;" thirdly, they allege "that from January 18, 1860, to January 1, 1861, they were the lawful owners of said mill and dam, and maintained the same during that period as tenants in common of said premises; that from that time to the present one Edwin Slade has been an equal owner with them of said premises; and that since that time said Slade and these respondents have maintained said mill and dam."

On the trial, the defendants objected to the reception of any evidence under the complaint, on the ground that it did not state a cause of action; but the objection was overruled. It appeared from the evidence that Edwin Slade was, at and before the commencement of the action, a member of the firm of Swift, Dillingham & Co., by which the mill was owned and occupied, and was owner of an undivided fourth of the mill

property, including the dam; and the defendants moved to dismiss the complaint on the ground that he was a necessary party defendant; but the motion was denied. The defendants requested the court to instruct the jury as follows: "1. This dam, having been built and maintained under the law of 1840, before its repeal, the owners are subject only to such liabilities as the repeal of the law subjected them to. 2. Neither the law of 1840 nor the revival of it in 1857 in any wise affects the rights or liabilities of the parties to this proceeding, in relation to the flowage of the plaintiff's land. 3. The flowing of the plaintiff's lands by this dam is not legalized by the act of 1857, but is a simple trespass or nuisance, and these proceedings cannot be maintained. 4. If you find that Edwin Slade is the owner of an undivided one fourth of the mill property, and one of its occupants, the verdict must be for the defendants." The defendants also asked certain instructions in relation to the measure of damages, which are given in full in the opinion of this court. All these instructions were refused. Verdict for the plaintiff, assessing his damages for the three years preceding the commencement of the action, and also compensation, annual and in gross, for future flowage. Judgment upon the verdict; from which the defendants appealed.

*J. A. Bentley*, for appellants:

1. Slade was a necessary party defendant. His property is subjected to a lien for the gross or annual damages for future flowage; he is subject to a personal action for those damages upon the judgment, and this judgment, if suffered to stand, will be conclusive against him as to the amount of plaintiff's claim; and he is also subject to contribute his proportion of the personal judgment rendered in this action for past damages. "Upon the ordinary principles upon which justice is administered in courts of equity, he could not be deprived of his property without actual or constructive notice of the suit, and an opportunity of making his defense." *Gray v. Schenck*, 4 Coms., 460. In *Davis v. The La Crosse & Mil. R. R. Co.*, 12 Wis., 16, this

court partially reversed a judgment upon the ground that parties who ought to be in court had not been brought there by the plaintiff; and the objection was not so clearly stated as we state it here. 2. Immediately before the passage of the act of 1857, the rights and liabilities of the parties were only such as were recognized by the common law. In other words, the mill owner had no right to flow the plaintiff's land, and in doing so was a trespasser, and his dam a nuisance. *Pratt v. Brown*, 3 Wis., 603; *French v. Owen*, 5 id., 112. No part of the act of 1857, not even the third section, indicates a purpose to make it retrospective and apply it to cases like the present, so clearly as to induce the court to give it that interpretation. Upon this point counsel argued that it was not competent for the legislature to destroy the plaintiff's rights, or the liability of the defendants, in reference to the previous trespass upon his lands. *Warner v. Griswold*, 8 Wend., 661; *Dash v. Van Kleeck*, 7 Johns., 477; 1 Kent's Comm., 508–10; Dictum of DIXON, C. J., in *Howland v. Needham*, 10 Wis., 495. 3. Counsel contended that the court erred as to the measure of damages, citing Sedgwick, 98, 99, and cases there cited; 17 Pick., 284; 2 Met., 615; 7 Greenl., 51.

*Jason Downer*, for respondent.

*By the Court*, COLE, J. We have no doubt that an action under the mill dam act to recover damages for the flowage of land, is to be regarded as a suit on the law side of the court, and is generally governed by those principles applicable to legal actions, unless where it is otherwise specially provided in the act itself. What effect, therefore, the non-joinder of Slade as a party defendant, who owns a one-fourth part of the mill property, must have upon the suit, is to be determined by the analogies of legal rather than equitable actions. It was suggested upon the argument that chap. 60, Laws of 1861, might have a bearing upon this question. By that act it is provided that whenever it shall appear to the court in which

an action is pending, either by the affidavit of a party to the action or by an *answer properly verified* of any party to the action, that a complete determination of the controversy cannot be had without the presence of other parties, or that any person not a party to the action is interested in the subject matter of the controversy, and whose interests should be protected, it shall be the duty of the court, at the instance of any party, to enter an order making the person interested a party. In the answer of the appellants it was stated, among other matters, that from the 1st of January, 1861, Slade had been an equal owner with them of the mill property; but this answer was not sworn to. Now, if we were to assume that under other circumstances the law of 1861 would apply to the case, and, if the answer had been sworn to, that it would have been the duty of the plaintiff to ask the court to enter an order making Slade a party, still, according to this view even, he was not required to do this unless the answer was verified. So that we must recur to the general provisions of the statute to ascertain what must be the consequence of the non-joinder of Slade as defendant. Our statute provides that a party may demur to the complaint when it appears upon its face that there is a defect of parties plaintiff or defendant (sec. 5, chap. 125); and when the fact does not appear affirmatively from the complaint, the objection may be taken by answer. Sec. 8. If the objection is not taken either by demurrer or answer, the defendant shall be deemed to have waived it. Sec. 9. As already observed, it is stated in the answer that from the 1st of January, 1861, up to the commencement of the suit, one Edwin Slade had been an equal owner of the mill property with the other defendants; and the question is, is this mere statement or suggestion in the answer to be considered an objection that there is a defect of parties, within the meaning of the statute. It seems to us that it is not. The defendants do not ask in their answer that Slade be made a party, nor do they object to the further prosecution of the suit on account of the non-joinder.

There is nothing, aside from the bare suggestion that he is interested in the premises, which shows that the defendants desire to take advantage of the omission to make Slade a co-defendant, or that they are unwilling to have the suit prosecuted against them alone. Now it appears to us that if a defendant wishes in his answer to take advantage of the non-joinder of a party who ought to be made a co-defendant, he should make it manifest that he does object to the further prosecution of the suit, upon that ground. He should state his objection clearly and distinctly, and not leave it a matter of doubt or inference whether he intends to rely upon the objection or not. We do not lay down any rule as to how formal the answer should be in order to raise the objection, but it should at least affirmatively appear that the party insists upon it and does not intend to waive it. Under the old system of pleading it is well known that the non-joinder of a party defendant could only be taken advantage of by a plea in abatement, which was regarded as a dilatory defense and not favored in law. Hence great accuracy and precision were required in the form of a plea in abatement, or it was held bad by the courts. In analogy to these rules, we think the objection that there is a defect of parties should be taken in the answer in a clear, distinct manner; otherwise the party shall be deemed to have waived it. See *Brainard v. Jones*, 11 How. Pr. R., 569; *Zabriskie v. Smith*, 13 N. Y., 322. In this case the objection that there is a defect of parties defendant is not so taken in the answer, and it is therefore not available.

The counsel for the respondent insisted that the action under the mill dam law might be brought against the occupants or owners of the mill, and since it appeared that Slade was not an actual occupant, he need not be made a party defendant. Whether this position is correct it does not become necessary to decide, in view of the remarks already made.

It is contended that the remedy given by the mill dam law does not apply to a case where the damage occasioned by the

flowage was caused by a dam in existence when the law took effect. It is only necessary, to show the unsoundness of this position, to refer to the different sections of the act, particularly section 26, which expressly provides that the law "shall extend, as far as applicable, to all cases where compensation has not been made for damages sustained by reason of the erection of any dam maintained on the sixth day of March, one thousand eight hundred and fifty-seven, or where the height to which the water may be raised has not been settled by contract with the owner, or otherwise pursuant to law, previous to said sixth day of March, one thousand eight hundred and fifty-seven." P. 400–1, R. S. This is as explicit as language can be, that the act shall apply to cases where the dam had been erected prior to the re-enactment of the law in 1857.

Again, it is contended that the circuit court did not lay down the correct rule in regard to the measure of damages. The charge of the court upon this point is not embraced in the bill of exceptions; but the defendants asked that three special instructions (5th, 6th and 7th) upon this subject be given the jury, which were refused, and it is upon these instructions that this question arises. These instructions were as follows: 5th. "That the correct measure of damages for the three years previous to the commencement of these proceedings, to be adopted by the jury, is the amount of what would have been the net value of the products of the flowed premises during that time and up to the time of verdict, if the water had been drawn off the premises at the commencement of the three years and remained off, taking into consideration the state of the land and its condition after having been flowed for eleven or twelve years; the damages cannot be estimated from what would have been the net products of the land in its natural state, or if it had never been flowed." 6th. "That the rule to be adopted by the jury in estimating the gross future damages, is the value of the land if the water should now be drawn off and kept off from this time, taking into consideration that the

land has been flowed for some fifteen years." 7th. " That the rule to be adopted by the jury in estimating the future yearly damages is what will be the amount of the net yearly products of the land, considering its condition from having been so long flowed." It seems to us that these instructions do not state the correct rule of damages applicable to the different cases. Test the first instruction by a single example. Land is overflowed by the waters of a mill dam for six years, and at the end of three years is rendered absolutely worthless in consequence of such flowage. At the end of six years the owner brings his action, and, by the fourth section of the mill dam act, is confined to the damages sustained for the three years next preceding the commencement of the suit. Now it is said the measure of damages is the amount of what would have been the net value of the products of the flowed premises during the last three years, taking into consideration the state of the land and its condition after having been flowed three years, which value in the case supposed would be nothing. So that the owner, because he did not attempt to recover compensation for the first three years, but lay by and brought his action to recover damages for the last three years, would be defeated, although his land had been ruined by the flowage. And the mill owner, although he had caused this injury by the waters of his dam, yet would not be answerable in damages, because he ruined the land in the first three years. No authority has been cited in support of such a novel position, and we are quite confident it cannot be law. The same error runs through the other instructions. They are so obviously incorrect in respect to the rule of damages, that no further time need be spent in exposing their unsoundness. The court very properly refused to give them to the jury.

These observations dispose of all the points in this case which are material and require to be noticed.

The judgment of the circuit court is affirmed.