14,750.

## WEAVER v. SHIPLEY ET AL.

LEASE.—*Reformation.*—*Indefinite Description.*—*Parol Evidence to Complete.*— A lease, or contract, for the conveyance of land must, to be enforced, contain a description of the land; and if the description, so far as it goes, is consistent, but does not appear to be complete, it may be completed by extrinsic parol evidence, unless a new description is introduced into the body of such lease, or contract. Such evidence is admissible only in aid of the lease, or contract, not to contradict it, nor to first describe the land, and then to apply the description.

SAME.—" *Three-Cornered Tract.*"—A lease of a tract of land described as "the three-cornered tract," in a certain described tract, is void, and the description of such three-cornered tract can not be supplied by parol evidence.

STATUTE OF FRAUDS.—*Lease.*—*Part Performance.*— *Improvements.*—*Injunction.*—Possession taken under a written lease that does not sufficiently describe the lands leased, and the making of lasting and valuable improvements thereon, are sufficient to take such lease out of the operation of the statute of frauds. If there has been such a part performance of the contract that to refuse a specific performance would work a fraud upon the party seeking it, a court of equity will grant the relief prayed. An injunction also lies, without asking a specific performance, to prohibit the landlord from interfering with the tenant's use of the land.

SAME.—*Sufficient Location of Property.* — The practical location of the boundaries of the leased premises by the landlord pointing them out, coupled with a subsequent possession of the same by the tenant, by and with the consent of the landlord, is a sufficient location of the property.

SPECIAL FINDING.—*No Request.*—A special finding made by the court without a request by one of the parties will be treated only as a general finding.

EVIDENCE.—*Lease.*—*Executed Copy Admissible without Accounting for Original.*—A lease was duly executed by the parties. Some time afterward one of the parties had a copy made, and both parties then signed such copy. This copy, in an action to reform the lease, was attached to the complaint as an exhibit.

*Held*, that it was admissible in evidence without first showing the loss of the original lease.

SAME.—In an action to reform the description in a lease, the statements of the parties while negotiating the lease, are admissible to locate the land and the terms upon which it was let.

INJUNCTION.—*Lease of Land for Tile Mill.*— *Use of Clay.*—*Evidence of Inability to Procure Clay Elsewhere.*—A. leased three certain tracts of land of B.,

one of which was insufficiently described in the lease, and from which tract A. had the right to take clay for tile. After he had taken out considerable clay for tile, B. threatened to enter on the insufficiently described tract, and he forbade A. to take any more clay. A. brought an action for an injunction to restrain B.'s interference with him in taking clay from such tract, alleging that he had erected valuable buildings upon the two other leased tracts, relying upon his right to take such clay, and that no other clay could be procured in that vicinity.

*Held,* that he was entitled to an injunction as prayed, and that evidence was admissible to show that no other clay could be procured in that vicinity.

From the Tippecanoe Circuit Court.

*J. R. Coffroth, J. H. Adams* and *T. H. Stuart,* for appellant.

*W. D. Wallace* and *S. P. Baird,* for appellees.

MILLER, J.—The appellees commenced this action to enjoin the appellant, Elmore Weaver, and one Bahlah W. Weaver from interfering with certain premises which it was alleged the appellees and one Underhill had leased from said Bahlah W. Weaver.

The defendants answered by a general denial. There was a trial by the court and finding against the appellant, Elmore Weaver, and judgment rendered against him enjoining him from interfering with the leased premises and for one hundred dollars damages, and in favor of Bahlah W. Weaver for his costs.

The appellant, Elmore Weaver, assigns errors as follows:

1. Because the court erred in overruling his separate demurrer to the amended complaint.

2. Because the court erred in its conclusions of law, and each of them.

3. Because the court erred in overruling his motion for a new trial.

4. Because the court erred in overruling his motion to modify the judgment.

5. Because the court erred in overruling his motion in arrest of judgment.

6. Because the amended complaint does not state facts sufficient to constitute a cause of action against him.

The material allegations of the complaint are, omitting descriptions and formal parts, that on the first day of March, 1883, the plaintiffs and defendant Underhill were desirous of procuring ground upon which to erect a tile mill for the manufacture of tile, and from which to obtain clay to be used in such manufacture; that on that day they applied to the defendant, Bahlah W. Weaver, who was the owner of the real estate, to lease the same for that purpose; that on said day the plaintiffs and Underhill, and the defendant, Bahlah W. Weaver, entered into an agreement whereby said Bahlah agreed to, and did, lease to them for the term of ten years, for the purposes aforesaid, three several tracts of real estate lying adjoining and contiguous to each other, for which they were to pay him as rent seventy-five dollars per year in tile, at the market price; that at and prior to the making of said lease, the plaintiff and said Weaver went upon and over the three tracks of land so leased and mutually pointed out and agreed upon the location of the same; that it was agreed, as a part of the contract, that the plaintiffs were to have all the clay suitable for tile upon the three-cornered tract which they might use during the terms of the lease, and, if they needed it, all the clay on all the tracts of land, but they were to use and occupy no more of the land or clay than they needed for use during the term of the lease; that after they had agreed upon the terms of said lease, and had pointed out and agreed upon, and located by actual view the three tracts of land, they attempted to reduce said contract of lease to writing, and attempted to describe therein the said land leased to them, and that they did sign and execute a written agreement of lease in which they attempted to describe, and thought they had sufficiently described, each of the tracts of land so pointed out, located,

·agreed upon, and leased as aforesaid ; which written contract is in the words and figures following, to wit :

" March the first, 1883. Article of agreement made and entered into between B. W. Weaver and James Shipley, Allen Shipley and William Underhill, to wit : B. W. Weaver .agrees to rent to the parties of the second part ground to set a tile mill, and shedding, and kiln, not to exceed four (4) acres ·of ground, it being in the northwest corner of the northeast ·quarter of the east southeast quarter of section twenty-seven (27), town. twenty-four (24), range three (3) west; also, a strip of land ten feet wide, on the west side of the east line running north and south, for the purpose of making tile, it being the east side of the northwest quarter of the southeast ·quarter, section twenty-seven (27), town. twenty-four (24), range three (3) west; also, a three-cornered piece in the northeast corner of the last described land, and to have all the clay they want for tile in the three-cornered piece, keeping south line parallel with the congressional survey of the land; and also one house, and stable, and garden, and smokehouse, the last described property in the southwest corner of the northeast quarter, section twenty-seven (27), town. twenty-four (24), range three (3) west; this lease is to run ten years from date ; the parties of the second part agree to pay the party of the first part seventy-five dollars annually in tile, at the market price, of such tile at the kiln, as the party of the first part may choose. If the parties of the second part failing to pay the amount, forfeit all rights to ·the above named premises, and the parties of the second part want a way out to the east road of the woods pasture, they must hang a good and substantial gate, and keep the same shut.

" B. W. WEAVER,
" JAMES SHIPLEY,
" ALLEN J. SHIPLEY,
" WM. UNDERHILL."

That immediately after the making of said contract, and the execution of said lease, and in pursuance thereof, they entered upon and took possession of all said real estate pointed out, and relying upon said contract and their ability to hold all of said lands for the term agreed upon, they, with the knowledge and consent of said Weaver, proceeded to and did erect various buildings of a permanent nature particularly described, and also constructed a barb-wire fence around the tract, costing in the aggregate in the neighborhood of $2,700; that after the erection of said mill and other buildings, and during the year 1883, the plaintiffs began to make and ever since have made and sold large quantities of tile, and with the knowledge and consent of said Bahlah W. Weaver they entered upon the three-cornered tract and have ever since continued to take clay therefrom, and use the same in the construction of tile, with the knowledge and consent of Bahlah W. Weaver and Elmore Weaver; that they have only removed the clay from a half acre of said three-cornered piece; that last fall Bahlah W. for the first time intimated that the plaintiffs had no right to remove clay from the so-called three-cornered piece of land, but they continued without molestation to remove clay therefrom until the close of the tile season; that Elmore Weaver claims to have purchased, in February, 1887, from Bahlah W. twenty acres of land, covering and including the so-called three-cornered tract of land, and since that time he and the defendant, Bahlah, have forbidden the plaintiffs from removing clay therefrom; that Underhill has sold and assigned his interest in the contract and lease to the plaintiffs; that Elmore Weaver, who is the son of Bahlah W., and had full knowledge of the making of the contract and lease at the time of the execution thereof, and of the exact location of said three-cornered tract, and knew where the same was located and agreed upon by the parties, and had full knowledge of the improvements, and that they had made the same on the faith of said contract and lease, and full

knowledge of the fact that it was absolutely necessary for them to have this tract in order to carry on their tile business at the time he purchased the land ; that the plaintiffs have no other place from which to obtain clay for their tile mill, and that they can not in that neighborhood procure any other place from which to obtain the same, and that unless they can obtain said clay their contract of lease ' will become wholly valueless and their tile mill and improvements will be wholly lost; that their lease has six years to run, and there is an abundance of clay on the three-cornered piece to last during the time it has to run ; that the defendant, Elmore Weaver, forbade the plaintiffs from entering on said three-cornered piece of land, or removing clay therefrom, and tore down the gate and bridge-way which the plaintiffs had constructed for the purpose of driving to said tract of land, and set fire to the bridge, and that he now threatens that he will by force and violence keep the plaintiffs away from said tract, and from removing clay therefrom, and that the defendants, Weaver and Weaver, are by force and threats of personal violence preventing the plaintiffs from entering upon or removing clay from said tract, and will continue to do so unless enjoined by this court, to their irreparable damage ; that the plaintiffs have fully complied with all the agreements and stipulations on their part, and have promptly and fully paid their rent as stipulated for in said lease, and that they have been damaged in the sum of $2,000. The prayer is for damages and an injunction.

The objection to the sufficiency of the complaint pointed out by the appellant is that the description of the land leased from Bahlah W. Weaver, as set out in the written lease, is so indefinite and uncertain as to render the contract void.

More fully stated, the position of the appellant is :

1. That the lease is void because there is no description of the land proposed to be leased, and that this defect can not be supplied by parol evidence, and in support of their position they cite *Dingman* v. *Kelly*, 7 Ind. 717, *Howell* v.

Zerbee, 26 Ind. 214, Pulse v. Miller, 81 Ind. 190, Baldwin v. Kerlin, 46 Ind. 426, and Miller v. Campbell, 52 Ind. 125.

2. That the lessee, having taken possession by virtue of the written agreement, he became a tenant by virtue of his act, and such tenancy is from year to year. Railsback v. Walke, 81 Ind. 409; Friedhoff v. Smith, 13 Neb. 5; Vinz v. Beatty, 61 Wis. 645.

3. That as to the " three-cornered " tract, the lease being void, the right to take clay was a mere license, not assignable, and revocable at pleasure. Armstrong v. Lawson, 73 Ind. 498.

The authorities cited establish the proposition that a lease or contract for the conveyance of land must, to be enforced, contain a description of the land ; that where the description, so far as it goes, is consistent, but does not appear to be complete, it may be completed by extrinsic parol evidence, provided a new description is not introduced into the body of the contract ; but that courts never permit parol evidence to be given, first to describe the land, and then to apply the description ; nor to contradict the written agreement, but only in aid of it. Baldwin v. Kerlin, supra.

Tested by this rule the description of the " three-cornered " tract of land seems to be so deficient as to require an entirely new description to identify the land, and this can not be furnished by parol evidence, as it would be substantially the making of a new contract by parol, which is forbidden by the statute of frauds.

If this suit was an action to enforce a contract entirely executory in its character, the authorities cited would be conclusive against the appellee. It remains, therefore, to inquire as to the effect of the partial performance set out in the complaint and proven on the trial.

The complaint proceeds upon the theory that the parties made a parol contract for the lease of the lands for the period of ten years ; that the land to be let was identified and pointed out, and all the terms and stipulations of the contract

fully understood and agreed to, and that afterwards the parties undertook to reduce their agreement to writing, but failed to sufficiently describe the land, and that, therefore, the contract, resting partly in writing and partly by parol, was in law a parol contract (*Pulse* v. *Miller, supra ; Board, etc.,* v. *Shipley,* 77 Ind. 553), and as such parol contract it was taken out of the operation of the statute of frauds by part performance.

The right, in a proper case, to enforce such a contract is impliedly admitted in *Railsback* v. *Walke, supra.*

In Pomeroy Spec. Perf., section 101, it is said : " As the statute speaks of lands, ' or any interest in or concerning them,' contracts to lease are both included within its terms, and are capable of being part performed so as to be taken out of the operation of the statute."

The case of *Fery* v. *Pfeiffer,* 18 Wis. 535, is much in point, where an agreement for a lease was taken out of the operation of the statute by partial performance ; also, *Seaman* v. *Aschermann,* 515 Wis. 678 ; *Wallace* v. *Scoggins,* 17 Ore. 476 ; *Morrison* v. *Herrick,* 130 Ill. 631 ; *Martin* v. *Patterson,* 27 S. C. 621.

In the language of BERKSHIRE, J., in *Swales* v. *Jackson,* 126 Ind. 282, the appellees having " entered into possession of the real estate under the contract, and having made lasting and valuable improvements, it would be inequitable and a fraud to withhold the title."

In Wood Landlord and Tenant, section 200, it is said that "A court of equity will decree a specific performance of such contracts, notwithstanding the statute of frauds, *when there has been such a part performance of the agreement that to refuse it would work a fraud upon the party seeking its specific execution.*"

The only infirmity in the written lease is its failure to sufficiently describe the leased premises. We are informed by the complaint that the premises were pointed out and agreed upon at, and prior to, the making of the contract,

and that soon after the appellees took possession of the same and made lasting and valuable improvements, such as they would not have made had they not relied upon the agreement to hold the same for the full period of ten years.

The agreement as to the boundaries of the leased land and its occupancy for four years, with the knowledge and consent of the landlord, is an important element in the partial performance relied upon, for it furnishes clear and satisfactory evidence, in favor of the appellees, upon the only proposition not established by the written instrument.

The misdescription of the leased property would not have furnished the tenants with a defence if they had been sued by the landlord for rent for the time they occupied the property. *Whipple* v. *Shewalter*, 91 Ind. 114.

The practical location of the boundaries of the leased premises, coupled with the subsequent possession of the same by the tenants by and with the landlord's knowledge and consent, is a sufficient location of the property. *Jackson* v. *Perrine*, 35 N. J. Law, 137; *Lush* v. *Druse*, 4 Wend. 313; *Pierce* v. *Minturn*, 1 Cal. 470; *Richards* v. *Snider*, 11 Ore. 197.

While the rules of construction to be applied in identifying boundaries in a lease are the same as those applicable to grants in fee, it is common, especially in the leasing of farm lands, to use less accuracy in the description of the premises than in deeds conveying the fee, and where the parties themselves put a practical construction on the contract, and the premises are taken possession of and occupied under the lease by the consent of both parties, it should be sufficient to take the contract out of the operation of the statute, where the only infirmity in the contract is the insufficiency of the description of the lands.  The court did not err in overruling the demurrer to the complaint.  The court made a special finding of the facts and conclusions of law, but as the record fails to show that it was at the request of either of the parties, it is to be treated as a general finding. *Has-*

selman v. Allen, 42 Ind. 257; 1 Works Pr.; section 804. And consequently the court did not err in its conclusions of law.

The only other points urged in their brief by counsel for the appellant are that the court erred in admitting illegal evidence.

The first relates to the action of the court in permitting the appellees to read in evidence the exhibit purporting to be a copy of the written lease, without first showing the loss of the original. It appears that originally but one copy was executed, but afterward the parties met and drew off a copy of the original, and all the parties signed it; and the copy so made was delivered to the appellees, being the one given in evidence.

The new paper thus made was, to all intents and purposes, a duplicate, and was delivered to the appellees to subserve the purposes of an original instrument. At all events it was a written instrument signed by Bahlah W. Weaver, and admissible against him and his privies in estate.

Objection is also made to the action of the court in permitting witnesses to state what the parties to the lease said to each other prior to the execution of the written agreement which lead to its execution. The portions of the record where these questions and answers are set out have not been pointed out; but if they had been we are unable to see how the court could have held the complaint good, and then prevented the plaintiff from introducing the only class of evidence by which it could be proven.

Lastly, it is said that evidence should not have been received showing that there was no clay in the neighborhood suitable for making tile except in one of the tracts leased. No objection is pointed out except that it was immaterial. The evidence tended directly to establish one of the material allegations of the complaint, and was not only competent but important, to show the condition the appellees were left in by the interference of the appellant; and also to fix the

damages they were entitled to recover because of the interference with their leased premises.

We find no error in the record.

Therefore, the judgment is affirmed.

