## MAIER v. CONTINENTAL OIL CO.
### No. 7423.

Circuit Court of Appeals, Seventh Circuit.

Feb. 21, 1941.

Rehearing Denied May 17, 1941.

BRIGGLE, District Judge, dissenting.

238

Wm. H. Zwick, of Ponca City, Okl., T. Morton McDonald and Douglas H. McDonald, both of Princeton, Ind., and Joseph H. Iglehart, of Evansville, Ind., for appellant.

A. K. Swann, of Evansville, Ind., and Claude A. Smith, Arthur S. Wilson, S. L. Vandeveer, and Earl Kintner, all of Princeton, Ind., for appellee.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

Plaintiff-appellee brought an action against the defendant-appellant seeking cancellation of an oil and gas lease. Defendant-appellant filed a counterclaim in which it sought a declaratory judgment upholding the validity of the lease. The case was tried by the court without a jury. A decree was rendered cancelling the lease. To reverse the decree defendant-appellant appeals.

Appellee was the owner of more than 2,500 acres of land in Gibson County, Indiana, and on July 12, 1937, agreed with one J. H. McClurkin to give him an oil and gas lease upon the same. McClurkin at that time prepared a lease, in duplicate, without descriptions and left one copy with appellee. July 27, 1937, at the request of McClurkin, she went before a notary public and executed the other copy of the lease the body of which at that time contained no descriptions but which had a paper containing various descriptions of real estate clipped or attached in some fashion to the back of it. The list of descriptions attached to the lease was the same as a list delivered a few days earlier by McClurkin to the appellee with instructions to attach to her copy of the lease. Appellee left the executed lease with the notary for delivery to McClurkin. September 28, 1937, McClurkin wrote the appellee, as follows:

"At the suggestion of the Abstracter corrections were made in descriptions in lease you executed to us so as to eliminate mention of Forest reservations, and we ask that you kindly attach the enclosed corrected description on your copy of the lease, as the enclosed description is the one that will go on record.

"We wish to thank you for your spirit of cooperation and we assure you we shall do everything in our power to discover any oil pools in that area.

"With kindest regards from both Mrs. McClurkin and myself, I beg to be

"Most sincerely yours,
"J. H. McClurkin."

Enclosed with his letter was a purported, corrected copy of descriptions exactly the same as a copy that was then placed in the body of the executed lease at the instance of McClurkin, in lieu of the list attached to the back of the lease. Appellee received this letter on September 30. September 29 McClurkin, after removing the list of descriptions attached to the back of the lease and after having caused the corrected list of descriptions to be attached to the face of the executed lease, filed the same for record.

In plaintiff's Exhibit 2 (the list clipped to back of executed lease) there are found at least fifteen separate descriptions, such as: "Pt NE¼ T 3 S 13 W. 120 A.; Pt. NW¼ 21 T3 13 W A 1 A; Pt. SE¼ 20 T. 3 S 13 W 120A." In the corrected list of descriptions, attached to the executed document (referred to throughout this proceeding as plaintiff's Exhibit 3) there are at least five similar descriptions. Examples are: "Pt. of Sec. 1 T3 SR 14 W, containing 82.32 acres; Pt. of fract. Sec. 36 T. 2 SR 14 W, containing 49.40 acres; Pt. of W. ½ of N. W. ¼ Sec 4 T 3 SR 13W, containing 1 acres."

All descriptions had been obtained and prepared by McClurkin pursuant to his arrangement with the appellee on July 12, 1937, when the forms of lease, except for descriptions, had been filled out. At the time of the execution of the lease there had been no oil or gas development in the vicinity of the lands in question, but thereafter McClurkin entered into negotiations with the appellant and by a contract, dated August 24, 1937, granted appellant the privilege of conducting certain surveys upon the lands in question. September 25, 1937, McClurkin executed an assignment of the lease to appellant. At the time of the assignment, appellant knew nothing of any changes or alterations of descriptions in

the lease. This assignment was filed for record December 27, 1938.

The lease provided, among other things that if no well be commenced on the lands by July 12, 1938, the lease should terminate unless lessee should on or before that day pay to the lessor's credit in the Peoples Bank and Trust Company at Mt. Vernon, Indiana, the sum of $256.90 which should operate as a rental and cover the privilege of deferring commencement of a well for twelve months from said date. June 6, 1938, pursuant to the lease, appellant deposited to the credit of the appellee with said bank the sum of $256.90 which the bank credited to her account, and mailed a duplicate deposit slip to appellee showing that that amount had been deposited by appellant to appellee's credit and the purpose for which it was deposited. Appellee denied receipt of this, but she did, however, each month receive from the bank a statement of her account, which showed all deposits to her account. December 22, 1938, appellee, asserting that she for the first time gained personal knowledge of this payment, instructed the bank to return same to the appellant and the bank, accordingly, did so; but the appellant refused to accept it and redelivered same to the bank. At the time of the execution of the lease McClurkin paid appellee $1 which she returned to McClurkin just prior to bringing this suit but which McClurkin likewise redelivered to appellee.

From July, 1938, appellant, with the knowledge of appellee, carried on exploratory work in the nature of drilling core holes on the land covered by the lease and other lands in Gibson and Posey Counties, Indiana, at an expense of about $10,000. As a result of appellant's operations, a discovery well was brought in in the Gibson County oil field (not on appellee's land) December 14, 1938, and seven days later, on December 21, 1938, she filed the present suit. During this period and during the progress of the exploratory work appellee met and spoke to various representatives of appellant but, upon express instructions from her attorneys, intentionally refrained from disclosing to them the fact that she considered the lease invalid.

In November, 1938, appellee sent for appellant's representative. In response to her message two representatives called on her separately in December. She discussed with each of them the question of the sale of royalty on her land in Gibson County.

She was informed by one of the representatives of the advantages of leases with prorating clauses and she had him take seven forms of leases to her attorney. Arrangements were made for a conference to be held on December 16 between her and appellant's agent at her attorney's office, but the discovery well came in on December 14 and appellee cancelled the appointment.

Plaintiff's Exhibit 2, attached to the back of the lease at the time of execution, recited a total acreage of 2,568.66 and plaintiff's Exhibit 3, the lease with corrected descriptions, as recorded, recited a total of 2,569.63. The corrected descriptions describe the same lands averred by plaintiff in her amended complaint to be the lands owned by her in Gibson County, which she could not more accurately describe because no survey thereof had been made for her, and these lands are further averred to be the lands attempted to be described in the recorded lease.

The corrected descriptions include all of appellee's lands in Gibson County and describe the lands by sections, townships and ranges and by lots, and with acreage in the respective tracts, all as designated in the government survey. A survey made for appellee a few days prior to the trial of the case showed that the acreage had by accretion been augmented 393.54 acres over the acreage recited in plaintiff's Exhibit 3.

The District Court made a large number of separate findings of fact upon which he stated his conclusions of law. He was of the opinion that the lease was void and rendered a decree cancelling the lease, and denied appellant's relief upon its counterclaim praying for a declaratory judgment validating the lease.

It is urged by appellee in support of the decree of the District Court that the lease as executed on July 27, 1937, with the purported descriptions attached to the back is utterly void for the reason that the lease itself contains no reference to the descriptions and the descriptions contain no reference to the lease, and for the further reason that at least 15 parcels of the real estate therein sought to be described are void for insufficient identification of the land. Appellee urges that these deficiencies cannot be supplied by parol evidence; further, that even though the lease as executed on July 27 should be held valid that the attempted correction of descriptions which were attached to the face of the lease before recording was an unwar-

240

ranted alteration by the lessee, invalidating the same.

Appellant urges that the lease, as executed on July 27, with descriptions attached to the back, was a valid lease and satisfied the law of Indiana; that the changes in the descriptions, later attached to the face of the lease, were not such alterations as would invalidate the lease, urging that the same were made in good faith and for the purpose of carrying out the intention of the parties; that plaintiff, with full knowledge of such alteration, acquiesced therein for more than 14 months before bringing this suit. Appellant further urges in reference to the faulty descriptions that if they be deemed incomplete they may be completed and the land identified by extrinsic proof.

■ *First.* Appellee contends the lease is void for lack of any description. We shall therefore discuss whether the paper containing the descriptions attached to the lease is a part of the lease. In the discussion our decision must of course be, and it is, guided by the decisions of the Indiana Courts.

■ The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together. 12 Am.Jur. p. 782; 17 C.J.S. Contracts, § 298, page 716; Phend v. Midwest Engineering, etc., Co., 93 Ind.App. 165, 177 N.E. 879, and Southern Surety Co. v. Merchants, etc., Bank, 203 Ind. 173, 192, 179 N.E. 327.

■ In our case there was no other reference in the form lease connecting the descriptions except the words "described as follows" preceding the blank space for description of real estate and the words in the later provisions of the lease as "the above described land" and "said described land." We think these were sufficient reference, as they related to the subject matter of the contract and were made as evidence of one agreement and are to be considered as one transaction. But even if we assume that the above recitals are not sufficient in themselves to connect the descriptions appearing upon the paper at-

tached to the back of the form lease, yet it is well settled that contracts governed by the statute of frauds, like other contracts, are to be read in the light of surrounding circumstances, Howard v. Adkins, 167 Ind. 184, 78 N.E. 665, and that parol evidence is admissible to apply a contract to its subject matter, Smith v. Ostermeyer Realty Co., 102 Ind.App. 164, 197 N.E. 743; Wills v. Ross, 77 Ind. 1, 40 Am.Rep. 279, and Warner v. Marshall, 166 Ind. 88, 75 N.E. 582. When thus read in the light of the surrounding circumstances it becomes clear that the appellee and McClurkin intended and had in view and it was understood that appellee was executing an instrument leasing all of her lands in Gibson County, Indiana. It would be inequitable and unjust to allow appellee under the facts in the instant case to take advantage of the fact that the list of descriptions had not been fastened and attached to the body of the lease. Such errors may be corrected by application to a court of equity.

We conclude the lease was not void for lack of a description. In reaching this conclusion we have not overlooked the cases cited by appellee.[1] These we have considered, but we believe that those cases have been modified by subsequent decisions of the Courts of Indiana, and that the true rule is stated in the cases first above noted.

■ *Second.* Appellee contends the lease is void for insufficient identification of the land intended to be demised. We are of the opinion this contention is not tenable.

■■ The office of the description is to furnish the means of identification. It is the settled rule in Indiana that that part of a deed which describes the premises conveyed should be construed with the utmost liberality, and the deed should not be held void for uncertainty, if by any reasonable construction it can be made available. Hannon v. Hilliard, 101 Ind. 310, and Weaver v. Shipley, 127 Ind. 526, 27 N.E. 146.

In Calton v. Lewis, 119 Ind. 181, 21 N.E. 475, the description omitted the State in which the land was situated. The trial court held the deed void. The Supreme Court reversed, saying, 119 Ind. page 182, 21 N.E. page 475: " 'A deed will not be declared void [for uncertainty] as long as it is possible, by any reasonable rules of con-

[1] Ridgway v. Ingram, 50 Ind. 145, 19 Am.Rep. 706; Wilstach v. Heyd, 122 Ind. 574, 23 N.E. 963; Pulse v. Miller, 81 Ind. 190; Graham v. Henderson Elevator Co., 60 Ind.App. 697, 111 N.E. 332, and Feichter v. Korn, 70 Ind.App. 205, 123 N. E. 355.

struction, to ascertain from the description found therein what property it was intended to convey [Citing Indiana case].'"

In Torr v. Torr, 20 Ind. 118, the contract involved failed to mention that the real estate was "north of range 5 west." The claim was made that the agreement was void for uncertainty. The Court rejected the claim, saying, page 122: "where the description, so far as it goes, is consistent, but does not appear to be complete, it may be completed by extrinsic, parol evidence * * *."

In White v. Stanton, 111 Ind. 540, 543, 13 N.E. 48, 50, the rule was announced thus: "where the description is so uncertain as to afford no reliable clue to a more definite and correct description, no title passes * * *, but that where the description, though too defective and insufficient of itself to identify any particular tract of land, can, nevertheless, be aided * * * and rendered definite and certain by the introduction of extrinsic evidence * * * a true description will be supplied at the hearing."

In Howard v. Adkins, supra [167 Ind. 184, 78 N.E. 666], the land involved was described as 120 acres of land, more or less, located about three miles west of Winamac, Pulaski County, Indiana, in sections 17 and 18, township 30 north, range 2 west. It was insisted the contract was within the statute of frauds because "the 120 acres of land cannot be located from the description given." The trial court in sustaining a demurrer held that parol evidence could not be heard to complete the description. The Supreme Court reversed and held that parol evidence of the situation of the parties and the surrounding circumstances when the contract was made was admissible so that the court might be placed in the position of the parties, and see with their eyes and understand the force and application of their language.

In Tewksbury v. Howard, 138 Ind. 103, 37 N.E. 355, Howard sold Tewksbury certain real estate. In the written contract the county and State of the location of the land were not named. It was insisted the contract was void for lack of a sufficient description. The Court held that parol evidence might be received to complete the description and identify the property. In our case appellee, in support of her position, cites Baldwin v. Kerlin, 46 Ind. 426, and Pulse v. Miller, 81 Ind. 190. These two last cited cases were considered in the Tewksbury case, supra, and held not to apply. So too in our case, we do not think they are applicable.

*Third.* Appellee contends that the correction of descriptions which were attached to the face of the lease before recording, invalidated the lease. We do not think this contention is sound.

The District Court in its findings of fact held that this correction was placed in said lease without the knowledge and without the consent of the appellee and that she never saw such form of oil and gas lease after she signed and acknowledged it, and that she never at any time received any new consideration therefor. This finding involves inferences to be drawn from slightly disputed fact questions, and we are not disposed to disturb fact questions, and we are not disposed to disturb the District Court's finding on these questions of fact. Indeed, we would have no authority to do so if the same is supported by any substantial evidence. This finding is based largely on the testimony of the appellee, as McClurkin died prior to the trial of the case. The argument of appellee, however, that the alterations were conceived in iniquity and amounted to a fraudulent alteration of the instrument, we do not believe was warranted. The evidence with all reasonable intendments to be drawn therefrom points forcefully to the conclusion that McClurkin's acts in undertaking to correct the descriptions were merely for the purpose of carrying out the original intention of the parties.

In its brief and upon oral argument appellant has urged the contention that appellee is estopped to deny that the lease is void. It is apparent in the view that we have taken of the applicable law, that it is unnecessary for us to discuss this contention, as well as others pressed upon us by appellant.

The decree of the District Court is reversed and the cause remanded with instructions to proceed in accordance with this opinion.

MAJOR, Circuit Judge (concurring in result).

I concur in the result reached, as well as the reasons therefor. In addition, however, it is my opinion that the plaintiff is estopped to deny the validity of the lease in controversy. It would serve no useful pur-

pose to repeat the facts as stated in the opinion. It appears certain that there was a meeting of the minds, not only as to the purpose of the lease, but that it was to include all the lands owned by the plaintiff, located in Gibson County, Indiana.

Accepting the finding of the District Court that the corrected descriptions were placed in said lease without the knowledge and consent of plaintiff, yet the fact remains that she received a letter from McClurkin on September 30, 1937, advising that the descriptions had been altered and, as thus altered, were included in the lease. She also had knowledge that the lease, with the altered descriptions, was appropriately recorded on September 29, 1937. In November, 1937, pursuant to a contract theretofore made between McClurkin and the Continental Oil Company (defendant), the lease was assigned to the latter for a valuable consideration. The circumstances strongly indicate—in fact, the conclusion seems inescapable—that plaintiff had knowledge of this assignment.

On June 6, 1938, defendant deposited an amount to plaintiff's account in a bank for the purpose of continuing the lease in force for a further period of twelve months. The amount deposited was in conformity with the lease, and the depositary was the one designated therein. Plaintiff's denial that she had knowledge of this deposit, under all the circumstances of the case, is not convincing, but whether she had actual knowledge or not, the bank was, by the terms of the lease, her agent, and she, at least, had constructive knowledge, and, in my opinion, is bound thereby.

Thus we have a situation where the plaintiff had knowledge of every material step taken in the execution and recording of the lease, as well as the payment of rental to continue it in force. She took no steps to question its validity until oil was discovered on December 14, 1938, in the neighborhood of the leased land, and a week later the instant suit was filed. It is apparent that it was only after plaintiff's oil rights had become valuable by reason of the discovery of oil in the neighborhood, that she decided to attack the validity of the lease. In this connection it must be remembered that the defendant, as assignee of the lease, purchased the same in good faith for a valuable consideration and relied upon the record, which it had a right to do. There is nothing to indicate that it had any knowledge, or reason to believe,

that plaintiff had any interest in the land included in the lease other than that disclosed by the record.

Under these circumstances, and others which might be related, it is my conclusion that a court of equity should not be utilized so as to enable plaintiff to cancel the instrument in controversy, in the hands of a third party, when she, by her acts and conduct, is largely, if not entirely, responsible for her asserted · predicament. Vincennes Savings & Loan Ass'n v. St. John, et al., 213 Ind. 171, 180, 12 N.E.2d 127; Dill v. Fraze, et al., 169 Ind. 53, 79 N.E. 971.

BRIGGLE, District Judge (dissenting).

My disagreement with the majority of the Court grows out of and is limited to the application of the Indiana law, as promulgated by the Supreme Court of that State, to the instant facts. I am of the opinion that the District Court properly applied the Indiana law.