TORR *et al. v.* TORR.

SPECIFIC PERFORMANCE.—In an action to enforce specific perform-
ance of a contract for the conveyance of land, if the contract states
sufficiently every other fact required in such a contract by the stat-
ute of frauds, but fails clearly to identify the land to be conveyed,
by an intelligible description, but contains a description which, so
far as it goes, is consistent, such ambiguity may be explained and
the defective description made complete by extrinsic parole evi-
dence, provided the necessary averments are contained in the com-
plaint on such contract.

PRACTICE.—Error in the admission of improper evidence in the Court
below, will not be available in this Court, unless the grounds of the
objection to the evidence are stated in the record.

A variance or defect in pleadings, which could have been amended
on the trial in the lower Court will be deemed to be amended in
this Court.

PLEADING.—*Semble*, that where several defendants in the same ac-
tion sever in their answers, the plaintiff may reply effectively to
them all by one general denial.

PRACTICE.—If the Court charge the jury erroneously upon a given
point, but afterwards correct the mistake by giving a legal charge,
on the same subject, there is no error.

Where a witness is offered and refused, in the Court below, and ex-
ception is taken, but the alleged error was not presented to the
Court in the motion for a new trial, it will not be available here.

Where the lower Court has omitted to enter a formal default against
a party who has been duly served with process and made default,
such omission may be corrected at any time whilst the proceedings
are *in fieri* in that Court, and if not corrected there, the same will
be regarded by this Court as amended.

APPEAL from the *Putnam* Common Pleas.

DAVISON, J.—The appellee, who was the plaintiff, sued
*James Torr* and others, the heirs of *William Torr*, deceased,
for the specific performance of a written contract for the sale

of real estate. The complaint consists of three paragraphs, to which the defendants severally demurred; but the demurrers were overruled, and they excepted. The first paragraph alleges these facts: On the 23d' of *June,* 1849, the plaintiff purchased of one *Joseph Deem* all the title and interest, present and prospective, which he and his wife, *Fanny Deem,* as heirs of the said *William Torr,* had, or might thereafter have, in and to the south-west quarter of section 35, in township 14, north of range 5 west, in *Putnam* county, for the consideration of 600 dollars. At the date of this purchase, *William Torr,* then in life, but now deceased, held the legal title to said quarter section, and, in consideration of the payment of the above sum, by the plaintiff, to *Joseph Deem,* he, *William,* agreed, by contract in writing, to convey to plaintiff his, *Joseph Deem's,* equal portion of the quarter above described. This contract was executed by both, *Torr* and *Deem,* and is as follows:

"Know all men by these presents, that I, *Joseph Deem,* have this day granted, bargained, sold and conveyed all my interest in a certain tract of land, described as follows, to-wit: the south-west quarter of section 35, in township 14, *Putnam* county, *Indiana,* (said quarter section being the property at this time of *William Torr, Sr.,* of the above named county,) unto *Mariah Torr,* of the State and county above named, for the consideration of notes and money to the amount of 600 dollars. The said *William Torr,* being the lawful owner of the above named quarter of land, and designing, at his decease, that *Joseph Deem* should inherit his equal portion of said quarter of land, but in consequence of the notes and money given said *Mariah Torr* unto the said *Joseph Deem,* the said *William Torr* and doth herein bind himself to make the title of the above named portion of land to *Mariah Torr* instead of *Joseph Deem.* In testimony whereof," &c.

(Signed,)                          "JOSEPH DEEM.    [SEAL.]
                                   "WILLIAM TORR." [SEAL.]

The quarter section, described in the contract, was under-
stood by the parties to be *north of range nine,* as *William Torr*
at the time owned it, and was the owner of no land in any
other range in *Putnam* county. It is averred that the portion
and interest of *Joseph* and *Fanny Deem,* (she being the daugh-
ter of *William Torr,*) of and in said section, was the one-half
of it, viz : the south half, which he, *William,* in and by his
contract, bound himself to convey to the plaintiff; that im-
mediately after the purchase, and in pursuance of said con-
tract, the plaintiff was, by *William Torr,* placed in possession
of the south half of the quarter, and has ever since retained
the undisturbed and peaceable possession thereof, making
thereon lasting and valuable improvements, worth at least
1000 dollars; and that the plaintiff has, long since, fully paid
the aforesaid purchase money; but the said *William* did not,
in his lifetime, convey to her the half quarter section of land,
as, in and by his contract, he was required; that he is now
deceased, and has made no provision, by will or otherwise, for
such conveyance.

The second paragraph alleges that *William Torr,* at his
death, left a son, *James Torr,* two daughters, *Fanny Deem,* the
wife of *Joseph Deem,* and *Elizabeth Coplinger,* and seven grand
children, the heirs of his deceased son, *William Torr, Jr.,*
who, while in life, was the husband of the plaintiff; that, in-
tending to give his three children each one-fourth of his
property, and one-fourth to the widow and heirs of his de-
ceased son, he, *William,* in his lifetime, advanced to *James Torr*
an eighty acre tract of land, (in consideration of which the
said *James* agreed, in writing, to make no future claim, as
heir, to his father's property,) and to *Elizabeth Coplinger* he
advanced 800 dollars; which advancements left the quarter
section herein described, which he intended to divide equally,
giving one-half to the plaintiff and her children, and the
other half to *Fanny* and *Joseph Deem;* that, on the 23d of

*January,* 1849, *William Torr* stated to the plaintiff that he designed, in the distribution of his property, to give her and the heirs of his deceased son a share equal to that of his own children; that he had made provision for *James* and *Elizabeth,* and intended to divide said quarter between her, as his daughter-in-law, and *Joseph Deem,* as his son-in-law; and, relying on these statements, she did, at his special request, and by his advice, purchase of *Joseph Deem* and wife their equal portion and interest in the quarter section, (which was by them, *Joseph* and *William,* represented to be one-half thereof,) for 600 dollars; all of which has been, by the plaintiff, long since paid to *James Deem;* and further, at the time of the purchase, they represented to her that the part of the quarter she was then purchasing was the south half of it; and they then and there executed to her the written contract above recited, which they also represented to be a good and sufficient title-bond for the south half of the quarter; and it is expressly averred that the written contract was meant and intended by all the parties to be a regular title-bond for said half quarter. That immediately after the execution of the contract and pursuant to it the plaintiff was placed in possession of the land, which she so intended to purchase, by *William Torr,* who also put her in possession of the north half of the same quarter section, and she has remained in the undisturbed possession of the entire quarter ever since, and has made improvements thereon worth 1000 dollars. It is further alleged that on the 17th of *April,* 1858, the plaintiff informed *William Torr* that she had paid *Deem* for the south half, and that she then desired a conveyance for the whole quarter, in pursuance of the terms of the purchase and of the gift; that he then executed to her a deed in fee for said north half, as and for the equal share of her and her children, of his estate, and, at the time, stated that the title-bond executed to her by him and *Deem* would be good for the other eighty after his death,

if he did not convey the same while living, and that she, having his bond, need be in no hurry as she was perfectly safe. And plaintiff expressly avers that she accepted the conveyance for the north half as the part and equal portion of herself and children in *William Torr's* estate, and for no other purpose whatever, and he is now deceased, having died without making any provision for the conveyance, to the plaintiff, of the land so purchased by her as aforesaid.

The third paragraph combines the statements, allegations, and averments of the first and second, making the written contract of *James Torr* and the alleged title-bond exhibits.

Against the validity of these pleadings it is argued that the bond, in suit, is void for .uncertainty, and does not therefore constitute a sufficient memorandum under the statute of frauds. Is this position correct? The bond, as we have seen, states very clearly the consideration of the sale, the title of *William Torr*, and his covenant to convey to the plaintiff; but the uncertainty is alleged to consist in its failure to identify the premises, with any intelligible description. *Brown*, in his treatise, says: "The subject matter of the defendant's engagement must, of course, appear from the memorandum. Land, for instance, which is purported to be bargained for, must be so described that it may be identified. But the subject matter may, in any case, be identified by an external standard, and need not be in terms explained." Thus to describe it as the vendor's right, in a particular estate, or as the property which the vendor had at a previous time purchased from another party, is sufficient. Brown Stat. Frauds, sec. 385. In other words, where the description, so far as it goes, is consistent, but does not appear to be complete, it may be completed by extrinsic, parole evidence, provided a new description is not introduced into the body of the contract. 2 Phil. Ev. 4 Am. Ed. p. 682, *et seq.*; 1 Greenl. Ev. ss. 297, 298; *Miller* v. *Travers*, 4 Bing. 244; *Maggart* v. *Chester*, 4 Ind. 124;

Torr et al. *v.* Torr.

*Nichols* v. *Johnson*, 10 Con. 193; *Colerick* v. *Hooker*, 3 Ind. 318. The case last cited was a bill to enforce a specific performance. The contract sought to be enforced was as follows:

"I have this day sold my lot to *Alexis Coquillard*, on the plat in the town of *South Bend*, on the plat of said town on the river bank. I have received value and will make the deed as soon as convenient. *August* 11th, 1835.

D. H. COLERICK."

The bill alleged that *Colerick* had, at the date of the contract, one lot, and but one, in said town, and that it was lot No. 94, for which a conveyance was sought. This Court held that the bill was sufficient, and that its averment of extrinsic facts, to explain and support the memorandum, was provable by parole evidence. In the case before us, the premises are thus designated: "All my, *Joseph Deem's*, interest in the south-west quarter of section 35, in township 14, *Putnam* County, *Indiana.*" The equal portion of said quarter, which *William Torr* designed *Joseph Deem* should inherit at his, *Torr's* decease. The contract, as we construe it, assumes that *Deem* had a prospective interest in the land, which was an equal portion of it, in expectancy. What was that interest? What portion of the land was his equal portion? To these inquiries there is not, on the face of the contract, any satisfactory response. The terms *interest*, and *equal portion*, in the connection in which they are used, are, no doubt, ambiguous; they are, however, consistent, and express the subject matter of the sale, but leave its identity uncertain. Now can such identity be shown by proof of extrinsic facts, evincing the intent of the parties, as to the exact quantity and description of the thing sold? This question, in view of the authorities to which we have referred, must receive an affirma-

tive answer.   How then stand the pleadings?   The complaint avers that immediately after the purchase, and in pursuance of said contract, the plaintiff was, by *William Torr*, placed in possession of the south half of said quarter, and has ever since retained the undisturbed and peaceable possession thereof, making thereon lasting and valuable improvements, &c. The facts thus averred at once describe and identify the equal portion, intended by the parties to be conveyed to the plaintiff.   She was placed in possession of the south half of the quarter, pursuant to the contract, a transaction which could not have occurred, unless that half quarter had been agreed on as the subject matter of the sale.   *Hildebrand* v. *Fogle*, 20 Ohio 147; *Dodge* v. *Potter*, 18 Barbour 194.

But the appellants propound this question:   How could the delivery of the possession of the south half be in pursuance of the contract, for *Joseph Deem's* equal portion, when the averments of the complaint show that he neither had, nor could have had any such interest as described?   We answer, *William Torr*, in his contract, says he intended that *Joseph Deem* should inherit the equal portion *at his decease.* The term inherit, in its legal signification, can not be properly applied to the prospective interest, as the same is referred to in the contract, because *Joseph Deem* could not himself, be an heir of *William Torr*, and of course, could not in his own right, take any thing from him by way of inheritance.   But the averments are that *Joseph Deem* was, at the date of the contract, the husband of *Fanny Deem*, who was then the daughter of *William Torr;* that the purchase was made of *Joseph* and *Fanny*, and embraced all the title and interest, present and prospective, which they, as his, *Torr's* heirs, had or might have in and to said quarter section.   Now these averments do not, in our opinion, show that *Joseph Deem* neither had, nor could have had any such interest as described, but they do show that in right of his wife, who was the prospect-

Torr et al. *v.* Torr.

ive heir of *William Torr*, he had an expectant interest in the equal portion referred to in the contract and identified in the pleadings. There is, in one respect, an apparent variance between the averments and the written contract. The complaint alleges that the plaintiff purchased of *Joseph* and *Fanny Deem*, all their interest in the land, while the contract states that the interest sold was *Joseph Deem's*. This alleged variance, it seems to us, is not material. *William Torr*, at the time of the sale, was the equal owner of the land, with his assent the purchase money was paid to another person; he bound himself to convey to the plaintiff, and, as we have seen, the subject matter of his engagement was sufficiently identified by the averments. These facts appear in the complaint, and, in our judgment, constitute a sufficient cause of action. Hence an inquiry as to whom the prospective interest in the thing sold, really belonged, would not involve an essential element in the case. The complaint, in respect to the supposed variance, could have been amended on the trial in the Court below, and will, therefore, be deemed to be amended in this Court. 2 R. S. p. 162, sec. 580; *Case* v. *Randal*, 16 Ind. 459.

The several demurrers to the complaint having been overruled, and, as we think, correctly, the defendants, *James Torr* and *Elizabeth Coplinger*, filed their joint answer, and *Fanny Deem* answered separately. These several answers are alike in form and effect, and are in substance, as follows:

1. A denial. 2. It is untrue that the interest of *Joseph Deem* in said quarter section of land, was the south half thereof, or that the obligors, by their said bond, intended that *William Torr* should convey that half, to the plaintiff. But they aver that the then interest of *Deem*, in said quarter was in the north half, and that the bond, when it was executed, was by the plaintiff, as also by *Torr* and *Deem*, understood to be for the purpose of obliging *William Torr*, to con-

vey to the plaintiff the north half of said quarter, and the defendants in fact say that *William Torr*, while in life, viz: on *April* 17th, 1858, by his deed of that date, duly executed and acknowledged, and recorded, conveyed to the plaintiff the north half of said quarter, in full discharge of the bond, &c. 3. That plaintiff did not, under or by virtue of said bond, take possession of said land or any part thereof; nor did *Deem* and *Torr*, or either of them, ever make any contract in writing, signed by them, or either of them, or by any person thereunto lawfully authorized by them, or either of them, whereby they, or either of them, engaged to convey to the plaintiff the south half of said quarter section. 4. That after the making of said bond, *William Torr* by a good and sufficient deed, conveyed to the plaintiff, for the consideration of 600 dollars, as therein stated, the north half of said quarter in full accord and satisfaction of the engagement in said bond contained, which deed she received in full accord and satisfaction for the same. 5. That *Joseph Deem* never had any interest in the land described in the complaint; never was, or under any circumstances could be, an heir to *William Torr*, and never did nor could, under any circumstances inherit from said *Torr*, the land described, or any part or portion thereof. 6. That the 600 dollars, named in the complaint, was paid to *Joseph Deem*, by *William Torr*, and not by the plaintiff. 7. As to so much of the complaint as refers to a purchase by the plaintiff, from *Joseph* and *Fanny Deem*, of their equal portion and interest in said quarter section, for 600 dollars, the defendants say that no contract in writing, signed by them, or by their agent thereunto lawfully authorized, was ever by them made with the plaintiff, or with any other person for her; that under the supposed contract, the plaintiff never took possession of or made improvements on said supposed equal portion; nor did she ever pay to *Fanny*, or to *Joseph* and *Fanny*, the 600 dollars, or any part thereof.

Torr et al. *v.* Torr.

To the several answers of the defendants, the plaintiff replied. 1. By a general traverse. 2. That defendants are estopped from denying the interest of *Joseph Deem* in the described lands, for this: that *William Torr*, deceased, by his bond, as described in the complaint, admitted that *Deem* had such interest, &c.; wherefore, &c. Defendants demurred to the second paragraph; but their demurrer was overruled and they excepted.

Upon the issues thus formed, the cause was submitted to a jury, who having found specially, as to certain questions of fact propounded to them, rendered a general verdict for the plaintiff. Motion for a new trial denied, and judgment, &c.

The defendants, as has been seen, answered separately. To these separate answers there is but one reply, and hence it is insisted that the issues are left open. Can a plaintiff, by one reply, take issue with separate answers? The question thus raised, does not appear to have been presented in any form, to the lower Court, and is therefore not properly examinable in this Court. *Peru, &c., R. R. Co.* v. *Dayton,* 18 Ind. 326; *Evey* v. *Smith, id.* 461; *Davis* v. *Engler, id.* 312. We think, however, that although the defendants sever in their answers, the plaintiff may reply effectively by one general denial, but on that point we give no definite opinion.

But the demurrer to the second paragraph of the reply, seems to be well taken. That paragraph directs itself to the entire answers, when it applies alone to but one special defence, and is on that account defective. *Slaughter* v. *Detiney,* 10 Ind. 103.

The causes for a new trial, so far as they are noticed in argument, are thus assigned: 1. The verdict is unsustained by the evidence. 2. The Court erred in permitting evidence to be given to the jury, over the defendants' objections, as appears by their bill of exceptions. 3. There was error in certain instruction given to jury. The second assignment is not

available, because the grounds of the objections to the admitted evidence, are not stated in the record. This position is sustained by the authorities. *Huston* v. *Huston,* 4 Ind. 139; *Smith* v. *Reed,* 7 *id.* 242; *Fleming* v. *Potter,* 14 *id.* 486.

The Court, of its own motion, thus instructed the jury: "If you believe from the evidence that *William Torr,* deceased, at any time subsequent to the making of said bond, told the plaintiff to keep the bond; that it would be good for the south half of said quarter, and that at or about the same time he made a deed to her for the north half of the quarter, and left the bond with her, to be by her kept and retained, as a contract for the south half, and upon which the Court would make her a title, and that she has so retained and kept the same, then you may find for the plaintiff." This instruction, it is insisted, told the jury that although the bond was intended by all the parties, for the north half; yet if *William Torr* told her, plaintiff, to keep it as a contract for the south half, they should find for the plaintiff, thereby in effect announcing to them as a principle of law, that a written contract about one subject matter, can be made by parole declarations to stand for or relate to another, and a different subject matter. We are not inclined to adopt this exposition. The Court, in what it tells the jury, does not assume that the bond was intended for the north half nor does it suppose a change of the original contract, but says, in effect, that if the facts assumed are true, and the declarations of *William Torr,* as stated, were made, they explain the apparent ambiguity in the bond, apply it to the south half of the quarter, and render the defendants, as his heirs, liable for a conveyance of that half to the plaintiff.

But suppose the instruction to be, as construed by the appellants, and, therefore, incorrect, still they can not be allowed to complain, because, at their instance, the Court, as appears by the record, subsequently gave this instruction: "The

subject of inquiry for the jury is, what parcel of land was intended by the parties when the bond was made and delivered to the plaintiff; for if at the time of the making of the bond, both *William Torr* and the plaintiff, understood it as being for the *north* half of the quarter section, then no subsequent agreement, by words merely, could make it relate to, or stand for, the *south* half of the quarter, but it would require a new agreement in writing." Now if, in view of the appellant's argument, the first instruction is erroneous, it must be conceded that the Court, in its second instruction, corrected itself by giving a proper direction to the jury. And the rule is well settled, that if the Court charge the jury erroneously upon a given point, but afterwards corrects the mistake by giving a legal charge, on the same subject, there is no error. *Sloo v. Roberts*, 7 Ind. 128; *Gronour v. Daniels*, 7 Blackf. 108; 1 Ind. 322.

The record shows that upon the trial the defendants, *James Torr* and *Elizabeth Coplinger*, to sustain the issues on their part, offered to introduce their co-defendant, *Joseph Deem*, as a witness; but their offer was refused, and they excepted. This ruling is assigned for error, but the point involved in the exception does not appear to have been presented to the Court in the motion for a new trial, and can not, therefore, be considered by this Court. 15 Ind. 440, 441; 12 *id.* 675. Another error relied on by the appellants is, that *Joseph Deem*, the husband of *Fanny Deem*, was made a defendant, appeared and demurred to the complaint, but filed no answer, nor does he appear to have been defaulted. The failure to default was, doubtless, an irregularity, but not such an one as, in any degree, affected the merits of the controversy. The defendant was served with process, had failed to plead, and the Court had a right to enter judgment against him as upon a default. If the entry of a formal default was not made, it was amendable in the Court below, and will be re-

garded as amended here.    *Key* v. *Robinson*, 8 Ind. 368, 369.

The remaining inquiry relates to the evidence; does it sustain the verdict?   The jury found specially, "that *William Torr, Joseph Deem* and the plaintiff, understood and treated *Deem* as having an interest in the quarter section of land; that that interest was regarded as one half of the quarter; that the plaintiff paid *Deem* 650 dollars for that interest, and that, in consideration of said payment, *William Torr* agreed to convey to the plaintiff the south half of said quarter.   That in *January,* 1849, the plaintiff, in pursuance of the contract, and with his knowledge, consent and approval, took possession of said half quarter; that he lived with her seventeen years; and that, also, in pursuance of said contract, and with his assent, she made valuable and lasting improvements on the same half quarter of land."   This verdict, if it accords with the proofs, fully sustains the case made by the complaint. The evidence is voluminous, and we are not inclined to refer to it in detail.   It is, however, conflicting, but upon examination of it we are of opinion that the conclusions of the jury ought not to be disturbed.   Having thus decided that the verdict must be allowed to stand upon the evidence, the ruling of the Court upon the demurrer to the second paragraph of the reply, though erroneous, will not be allowed to reverse the judgment, especially as that reply does not appear to have had any effective bearing in the decision of the cause.

*Per Curiam.*—The judgment is affirmed, with costs.

*R. L. Hathaway* and *Wallace & Harrison,* for the appellants. *Matson & Daggy,* for the appellee.