## HARPER v. KELLAR.

A petition for the specific performance of a contract for the conveyance of land, which fails to so describe the land that the court may, with at least reasonable certainty, know the land of which it is asked to decree a conveyance, is demurrable for the want of equity.

Argued March 12, — Decided April 6, 1900.

Equitable petition. Before Judge Reese. Elbert superior court. March term, 1899.

*W. D. Tutt & Son,* for plaintiff.
*I. C. VanDuzer* and *C. P. Harris,* for defendant.

FISH, J. This was a suit for the specific performance of a parol agreement for the sale of land. There was a demurrer to the petition, upon the ground that there was no equity in it. The demurrer was sustained, and we are to determine whether the court below erred in thus ruling. It is not until we reach the fourth paragraph of the petition, and only in that paragraph, that we find the statement of the parol agreement which the plaintiff asks the court to specifically enforce. This agreement is there stated as follows: "On or about the last of February, 1898, your petitioner made with the said J. Frank Kellar a certain other parol agreement, by which your petitioner was to take the purchase of the four hundred dollar tract, your petitioner to pay to the said J. Frank Kellar four hundred dollars and take his deed to the same." So the plaintiff seeks to compel Kellar to convey to him the "four hundred dollar tract." It is apparent that the expression, "the four hundred dollar tract," in and of itself, describes nothing. If this were all of the agreement, it needs no argument to show that no court of equity could ever enforce it, because of the court's inability to lay hold of the particular tract of land which was the subject of the contract. The allegation that the agreement was that the plaintiff "was to take the purchase of the four hundred dollar tract" would seem to imply that there is something elsewhere in the petition by which the meaning of this expression can be ascertained. Nothing which comes after this allegation attempts to throw any light upon the meaning of this expression; and, from the words

themselves, one would naturally expect to find the explanation in the petition before this allegation is reached. Let us see whether this is true or not. The first paragraph of the petition is as follows: "That J. Frank Kellar, . . . owns title to a certain tract or parcel of land situate in the county of Elbert, State of Georgia, in the 192d district, G. M., of Elbert County, State of Georgia, adjoining the lands of W. E. Tate, E. B. Tate, and Mrs. Marie H. Harper, containing seventy-eight acres, more or less, which said tract of land was purchased by the said J. Frank Kellar from James L. Tate, of Elbert County, Georgia, on the 17th day of February, 1898, as evidenced by deed of date last mentioned, and recorded in book of deeds, QQ. of Elbert County, folio 114, on the 7th of March, 1898." It will be seen that there is nothing here to indicate the purchase-price of this tract of land, nor any intimation that the land described is the subject-matter of the contract which the plaintiff wants specifically enforced. The second paragraph merely alleges that W. E. Tate, a tenant of Kellar, is in possession of this land under a contract of rental for the year 1898. The third paragraph is as follows: "That your petitioner and the said J. Frank Kellar, about the 20th of February, 1898, entered into a certain parol agreement by which they were to purchase two certain tracts of land in Elbert County, Georgia, your petitioner to furnish the sum of four hundred dollars in cash, and the said J. Frank Kellar the sum of one thousand dollars; your petitioner to pay thereafter the balance of his half of the purchase-money, and they to become joint owners of the two tracts of land; and, in pursuance of said parol agreement, your petitioner purchased of Jas. L. Tate, of Elbert County, Georgia, the tract of land herein described, paying as earnest to bind said bargain the sum of five dollars, and endeavored to purchase the other tract of land agreed upon from E. B. Tate, but failed to negotiate the purchase, on account of the failure of the said J. Frank Kellar to raise the thousand dollars." There is nothing here which shows that the tract of land which Harper, the plaintiff, purchased from Jas. L. Tate was a "four hundred dollar tract," and, if there were, its identity with the only tract described in the petition is neither alleged nor indicated, unless the words,

"the tract of land herein described," can be construed to have
this effect.    To construe the words, "the tract of land herein
described," as referring to the land described in the first para-
graph of the petition would necessarily involve a palpable con-
tradiction; for how could *Harper,* in pursuance of a contract
between himself and Kellar, entered into about the 20th day of
February, 1898, purchase of Tate a parcel of land which had
*already,* on the 17th of February, 1898, been purchased by *Kel-
lar* from Tate, and to which Tate had, on that very day, made
Kellar a deed?    The fourth paragraph begins with the state-
ment that, "when the said J. Frank Kellar was disappointed in
raising the one thousand dollars which he was to furnish for the
purchase of both of said tracts of land, he became dissatisfied
with the purchase of the four hundred dollar tract hereinbefore
described," and then follows the allegation which we have here-
tofore quoted, setting up the parol agreement which the plaintiff
seeks to have enforced.

Is it at all clear that "the four hundred dollar tract hereinbe-
fore described" is the tract described in the first paragraph,
which Kellar purchased from Tate? We think not. The use of
the expression, "the four hundred dollar tract," carries with it
the idea that there was more than one tract.  The parties agreed
to purchase two tracts, and, in pursuance of this agreement, the
plaintiff purchased one tract from Tate, which, so far as can be
ascertained from the petition, was the only land which was pur-
chased under this agreement.   When "Kellar was disappointed
in raising the one thousand dollars which he was to furnish for
the purchase of both of said tracts of land, he became dissatis-
fied with the purchase of the four hundred dollar tract."   One
purchase, and only one, had been made in pursuance of the
agreement, and that purchase was by Harper, the plaintiff, from
James L. Tate.   Does the plaintiff refer to the purchase of this
tract, when he alleges that Kellar, being disappointed by his
failure to raise the amount which he was to furnish to purchase
both bodies of land, "became dissatisfied with the purchase of
the four hundred dollar tract?"   If the court is to grope among
obscure allegations and indulge in mere plausible guesswork,
to arrive at the plaintiff's meaning, is it not most natural

to suppose that this is the tract with the purchase of which Kellar became dissatisfied? But if this is "the four hundred dollar tract," how can it be one and the same with the only land described in the petition, when that land was purchased, *not by Harper, but by Kellar,* and purchased by and conveyed to Kellar *before* the agreement between himself and Harper, *in pursuance of which* the latter made the purchase from Tate? While it is alleged, in the eighth paragraph, "that on the 4th day of March, 1898, the said J. Frank Kellar, on a postal card written to your petitioner, made also a written agreement to carry out the terms of said parol agreement, and again on the 14th day of March, 1898, in a letter written to I. G. Swift, of Elberton, Georgia, expressed his willingness to carry out said parol agreement," these allegations do not even tend, in any degree, to clear up the obscurity with reference to the particular land which was the subject-matter of the alleged contract. Neither the contents of the postal card nor those of the letter are stated, nor is a copy of either attached to the petition. So the plaintiff is merely stating his own conclusions with reference to the effect of these writings, and, even as he states them, he throws no additional light upon "the terms of said parol agreement" which the defendant, in the postal card, agreed, and in the letter expressed his willingness, to carry out. In our opinion, the petition fails to make out a case for the specific performance of a contract for the sale of land, because it fails to identify the land which was the subject-matter of the alleged agreement.

"To justify the specific execution of a parol agreement, its terms and conditions should be precisely stated. If the contract which is sought to be performed is vague and uncertain, . . equity will not enforce it." *Miller* v. *Cotten,* 5 *Ga.* 341 (4). In *Printup* v. *Mitchell,* 17 *Ga.* 558, it was held, that, "A parol contract for land, like the reformation of a deed by parol proof, should be made out so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the agreement." In *Shropshire* v. *Brown,* 45 *Ga.* 175, the rule is stated as follows: "To entitle a complainant to a decree for a specific performance of a parol contract for the sale of land, the contract must first be established with reasonable certainty, and the consideration claimed

to have been paid or rendered therefor must be clearly and satisfactorily proved to have been paid or rendered, in pursuance of that contract; otherwise, a specific performance of the contract should be refused." Again, in *Studer* v. *Seyer*, 69 *Ga.* 125, this court held that "A contract upon which specific performance is sought must be certain, definite and clear, and so precise in its terms that neither party can reasonably misunderstand it." In *Beall* v. *Clark*, 71 *Ga.* 818, the rule is laid down that "A parol contract for land, on which specific performance is sought, should be made out so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the agreement." In Fry on Specific Performance, § 326, it is said that, "Where it is necessary to call in extrinsic evidence, the connection of the subject-matter of the contract, and the thing in respect of which specific performance is sought, must be pleaded and supported by sufficient evidence." This is clearly in consonance with sound law and sound sense. In Allen v. Chambers, 4 Ired. Eq. (N. C.) 125, where specific performance of a parol contract for the sale of land was prayed, the court held that "A bill praying for the specific performance of a contract for the conveyance of land is defective, if it does not contain so particular a description that the court may know with certainty the land of which they are asked to decree a conveyance." In the opinion, Ruffin, C. J., said: "The plaintiff could get no decree on his bill, as at present framed, if it were admitted by demurrer or in an answer; for it contains no description of the land of which he seeks the conveyance, from which the court could decree an immediate conveyance of any land in particular, or could ascertain the land by ordering a survey." In Gray v. Davis, 3 J. J. Marsh. (Ky.) 381, it was held that a "Bill for conveyance of land must give such particular description of the land as will enable the chancellor to decree its conveyance." In Torr v. Torr, 20 Ind. 118, the court held that, "In an action to enforce specific performance of a contract for the conveyance of land, if the contract states sufficiently every other fact required in such a contract by the statute of frauds, but fails clearly to identify the land to be conveyed, by an intelligible description, but contains a description which, so far as it goes, is consistent, such ambiguity may be

explained and the defective description made complete by extrinsic parol evidence, provided the necessary averments are contained in the complaint on such contract." Before a court will undertake to decree specific performance of a contract, the particular subject-matter of the contract must necessarily be identified with at least reasonable certainty; and where the language of the contract itself, as set out in the petition, fails to do this, and it is not aided by other allegations in the petition which remove this uncertainty as to the subject-matter, no case is stated for the exercise of this extraordinary power of equity. The court will not, and can not, grant the extraordinary relief prayed for, unless it can with certainty lay hold of the subject-matter of the contract. Where the subject-matter is land, the land must be definitely described. The allegations of this petition with reference to the tract of land involved in the controversy were too vague, indefinite, uncertain, and confused to give the plaintiff a standing in a court of equity for the relief for which he prayed; and it was, therefore, not erroneous to sustain a demurrer upon the ground that there was no equity in the petition.

*Judgment affirmed. All the Justices concurring.*