## LUFBURROW *v.* EVERETT.

1. The trial below was conducted without error of law, and a verdict for the plaintiff was demanded by the evidence. The court therefore erred in granting a new trial.
2. The verdict authorized the decree that the court below rendered, rescinding the contract between the parties, restoring the land to the plaintiff, and granting the perpetual injunction prayed for by the petitioner.

Argued June 13,—Decided July 22, 1901.

Equitable petition.    Before Judge Seabrook.    Effingham superior court.    October 6, 1900.

*D. H. Clark* and *Lester & Ravenel*, for plaintiff.
*H. B. Strange*, contra.

LEWIS, J.    On March 13, 1890, a written contract was executed by Mrs. Caroline Lufburrow and Joel Everett, in which she conveyed to him the timber on a tract of land owned by her. Afterwards, in the same year, he moved his sawmill to the land and began cutting the timber.    In 1897 she sued him for $400 and interest alleged to be due under the contract; and prayed that he be enjoined from cutting timber on the land.    The contract stipulated for the conveyance of the timber in consideration of $600, upon the following terms: Two hundred dollars was to be paid cash, and two notes, each for $200, were to be given by Everett, the first payable ninety days after Everett's tramroad should reach the Central Railroad, which was to be during the same year, 1890, and the second payable ninety days after the payment of the first.    It was agreed that Everett should have sufficient time to cut the timber off of the land, and that his mill might remain on the land "to cut other timber as he might thereafter have."    Everett bound himself to locate his tramroad on the tract of land, and to complete it within ninety days after it was so located, "should no providential causes hinder him from so doing."    The petition alleged that, when the

contract was made, the defendant told the plaintiff that he intended at once and continuously to engage in a sawmill business, and would not want more than a reasonable and sufficient time in which to cut the suitable sawmill timber from the land; and because of this statement no exact time was stipulated when he should cease cutting and remove from the land, but she then understood and believed that, when he should have remained on the land a sufficient length of time, he would have cut all the merchantable sawmill timber on it, and would give her possession of the land; that he still remains in possession of it and refuses to allow her to go upon it for turpentine or other purposes, though he has been in exclusive and uninterrupted possession of it ever since the date of the contract, engaged in cutting the timber, and for a sufficient length of time to have cut and sold all the sawmill timber on the land; and if he has not cut all the timber it is his own fault; that he paid her $200 of the contract price, March 13, 1890, but he has never given either of the notes provided for in the contract, nor paid the remaining $400 due, and refuses to do so, assigning as a reason that he has never built the tramroad, and that the contingency has not occurred when he should give the notes or pay the money.  The defendant in his answer set up that he had fully complied with the contract as to the payment of the purchase-money, that he had paid the plaintiff $478.30 as purchase-money, and had cut only about an eighth of the sawmill timber on the land.  He alleged that he put his mill on the land in September, 1890, but, in consequence of heavy rains, could not run his mill or build the tramroad contemplated by the contract of March, 1890, and he went to the plaintiff and told her it was impossible for him to comply with the terms of the contract as to the building of the tramroad, and she told him it was "all right," "to just go ahead and cut the timber and pay for it as you cut it;" that he acted on this statement, and considered that the contract to build the tramroad was at an end; that no time was fixed by the contract in which he was to finish cutting the timber, but he was to have his own time for that purpose; and that from time to time he had been delayed because the land was covered with water; and that he had paid all of the $600 but $121.70, which he was willing to pay at the proper time.

After the first trial of the case the court granted a new trial. The next trial resulted in a verdict against the defendant.  He

made a motion for a new trial, which was granted, and the plaintiff excepted. The verdict consisted of special findings in response to questions submitted, as follows: "Did Mrs. Lufburrow and the defendant, after the execution of the written contract sued upon, enter into an oral agreement with reference to the timber in dispute? No. If they did, did they change the terms of the written contract with reference to the time of paying for and cutting the timber? No. Did Mrs. Lufburrow consent that Everett should cut the timber and pay for it as he cut it? No. Did she accept payments made by Everett in pursuance of such change? She did accept payments made by Everett, but not in pursuance of any change. What amount of timber has Everett cut from the land in dispute? Between one eighth and one fourth. What amount, if any, is Everett due the plaintiff? None. Has Everett had sufficient time, under the facts of the case, to cut the timber? Yes."

1. Where timber is sold in the manner above set out, and no time is specified as to how long the purchaser shall have to cut it, the law allows him a reasonable time for such purpose. This contract was made in March, 1890, and the defendant took possession of the land, moved his sawmill upon it, and began cutting timber during the same year. This suit was not brought until 1897. The evidence is overwhelming that he had ample opportunity to finish cutting the timber before that time, and indeed he says in his testimony: "I believe I could have cut all the timber easily with the seasons we have had, and the reason I have not done so was that I had no demand for the lumber." It appears that no attempt was ever made to build the tramroad as required by the contract. According to the contention of the defendant, he might hold the land forever and prevent the owner from obtaining possession of it, although he purchased only the right to cut the timber and was to have only a reasonable time in which to accomplish that object. It is to be noted that although the plaintiff sought to recover a money balance alleged and admitted to be due her under the contract, the special verdict of the jury did not allow that claim. She is apparently satisfied with the verdict, however, and only seeks to regain possession of her land, which we think, under the evidence, she has a clear right to do. A verdict in her favor for the land was demanded. No errors requiring the grant of a new trial were committed.

2. The trial judge entered a decree on the verdict, and it was

fully authorized by what the jury had found. He decreed the defendant, his tenants, his agents, and assigns, should not have the right to enter upon the land again or get any more of the timber. The temporary injunction before granted he made perpetual, and forever enjoined the defendant, his agents and assigns, from trespassing upon the land. The decree further gave the plaintiff permission to enter upon her land at pleasure, and to have the full, quiet, and peaceful possession of the same and the timber thereon. Of course, the effect of the judgment of this court is to set aside the order of the court granting a new trial, and to leave the last verdict of the jury and the decree of the court rendered thereon in full force, thus bringing to a final termination all of the issues between the parties. *Judgment reversed. All the Justices concurring.*