## 3501. CHERRY LAKE TURPENTINE CO. *v.* LANIER ARM-STRONG CO.

1. The evidence supports the verdict.
2. The following description in a lease is sufficiently definite to identify the property covered thereby, without the aid of parol evidence: "All and singular the timber suitable for turpentine purposes growing on the following described lot of land, to wit, lot number 151 in district 15, land lying in Brooks county, State of Georgia."
3. Standing timber is realty, and a deed thereto should be attested with the same formality as deeds to land. The fact that a deed is attested by only one witness does not affect its validity as between the vendor and the vendee and those who take with actual notice of the deed. The defect in the execution affects only the right to record and the method of proving the execution.
4. While an instrument purporting to convey partnership interest in realty should be signed by the individual members of the partnership, yet the defect is not material, where it is admitted that the instrument, although signed only in the name of the partnership by one of the members, was in fact made by authority of all the partners and for the partnership interest, and in pursuance of the partnership business.
5. The undisputed evidence shows that the defendant had actual knowledge of the execution of the prior leases of the plaintiff when the trespasses complained of were committed. In view of this fact, any mere technical defects in the formal execution of any of the leases held by the plaintiff should not protect the defendant from liability for admitted trespasses resulting in damage to the plaintiff.
6. No material error of law appears.

DECIDED JANUARY 15, 1912.

Trespass; from city court of Quitman—Judge McCall. April 21, 1911.

*Bennet & Long,* for plaintiff in error.
*Branch & Snow;* contra.

HILL, C. J. Lanier Armstrong Company brought suit in the city court of Quitman against Cherry Lake Turpentine Company, to recover damages for alleged trespasses, alleging, that on November 15, 1907, it was the owner by lease of all the timber suitable for turpentine purposes on described lots of land in Brooks county, Georgia; that there was a sufficient number of pine trees on these lands to cut 25,000 turpentine boxes of the aggregate value of $3,750; that on said date the defendant entered upon these lands without legal authority or right, unlawfully took possession of the timber thereon suitable for turpentine purposes, and boxed it, and since said date had exclusively appropriated to its own use this timber, adversely to the plaintiff's rights, and had been since

said date, and was still, at the time of the filing of this suit, extracting turpentine from the timber. The defendant admitted that it was using the timber described in the petition, but contended that it had a right to do so under leases which it fully set up in its plea. The jury found a verdict in favor of the plaintiff, for $2,075.02; the defendant's motion for a new trial was overruled, and the case is here for review. On the trial it was admitted that both plaintiff and defendant claimed the timber in dispute and the right to take the turpentine therefrom, under common grantors, and it was not denied by the defendant that it was cutting timber on the land for turpentine and was extracting turpentine therefrom. The evidence showed that the lease under which the plaintiff held the timber and the right to the turpentine was prior in date and was recorded prior to the lease held by the defendant; and the evidence for the plaintiff also showed that the defendant had actual notice of the existence of this lease when it took its lease and entered upon the land, taking possession of the timber and boxing the same for turpentine. The leases under which both parties claimed were introduced in evidence and their execution was sufficiently proved. Their terms and conditions will be referred to as it becomes necessary to illustrate the questions raised by the record and discussed in the course of the opinion. Defendant's motion for a new trial contains numerous assignments of error, but the same questions are substantially made in several grounds of the motion, and it is unnecessary to consider the grounds seriatim.

1. The general grounds of the motion may be disposed of by the statement that the only questions at issue between the parties were as to the value of the turpentine which the defendant had taken from the trees, and whether or not the plaintiff had exercised its right under the lease to take the turpentine from the timber within a reasonable time. The other questions of fact are controlled by assignments of error in law, and need not be separately considered. There was evidence to support the verdict, and, having been approved by the court, it will not be disturbed unless material error of law appears.

2. The leases under which the plaintiff claims title to the timber were all attested by only one witness, and all were recorded in the clerk's office of the superior court of the county

where the timber was located. The defendant objected to the admission of these leases in evidence, (a) because the description of the property conveyed therein was too vague and indefinite; (b) because the leases were not attested by two witnesses, it being insisted that, being conveyances of an interest in land, it was necessary that they be executed as deeds and attested by two witnesses, one of them an official witness; (c) that, without such attestation, their record was unauthorized, and therefore afforded no constructive notice. These objections apply specifically to what is known as the White lease, which is the lease under which both parties claim from a common grantor. Here it may be stated that the leases under which the defendant claimed were properly attested as deeds and were properly admitted to record. The description contained in the White lease, through which the plaintiff claimed title, described the property as follows: "All and singular the timber suitable for turpentine purposes growing on the following described lot of land, to wit, lot number 151 in district 15, land lying in Brooks county, State of Georgia." Was this description sufficiently definite? It gives the number of the lot of land, the district in which located, and the county and State. The only particular in which this description is not absolutely specific and definite is in the fact that it does not state the number of acres contained in the lot of land. We do not think this important, in view of the fact that it does convey "all and singular the timber suitable for turpentine purposes growing on" the land lot mentioned. It is wholly immaterial how many acres the land lot contained. All the timber located thereon suitable for turpentine purposes was specifically conveyed by the instrument. In the case of *Carter* v. *Williamson,* 106 *Ga.* 280 (31 S. E. 651), the Supreme Court held that a description in the same language as the above was unambiguous and clear, and conveyed all the timber standing on the lands described in the lease. The cases cited by counsel for plaintiff in error in support of the contention that the description was vague and indefinite are distinguishable on the facts from the present case. In *Douglass* v. *Bunn,* 110 *Ga.* 162 (35 S. E. 339), the conveyance failed to designate the number of the lot, or the county or district in which it was situated. In *Clarke* v. *Stowe,* 132 *Ga.* 621 (64 S. E. 786), the description was: "all that tract or parcel

of land known as lot 162½ acres of lot 169 in the 6th district of Montgomery county, Georgia." The 162½ acres of land in the land lot were not specifically described. In the present deed, as above suggested, it was immaterial to describe the number of acres in the land lot, because all the timber thereon suitable for turpentine purposes was covered by the lease. Where a deed conveys a designated number of acres, it should indicate by boundaries, or other description, the particular number of acres conveyed, in order to furnish indicia by which the particular tract in the land lot could be identified. The words of description in the *Clarke* case, supra, were not even sufficient to furnish a basis for making more specific the description by parol testimony.

The other cases cited by learned counsel,—*Crosby* v. *McGraw*, 133 *Ga.* 560 (66 S. E. 897), *Richardson* v. *Perrin*, 133 *Ga.* 721 (66 S. E. 899), *Singleton* v. *Close*, 130 *Ga.* 717 (61 S. E. 722), and *Harper* v. *Keller*, 110 *Ga.* 420 (35 S. E. 667),—are all distinguishable from the present case, so far as they relate to the description of the property conveyed.

3. The next objection made to the admissibility of what is known as the "White lease," under which the plaintiff claimed title, was that it was not attested by two witnesses, nor by a notary public or other judicial officer. This objection is based upon the contention that timber is realty, and that a conveyance of all the timber suitable for turpentine purposes was a sale of realty. In numerous cases the Supreme Court of this State has held that standing timber is realty, and that conveyances of standing timber are to be treated as deeds and are to be executed with the same formality, and in fact have all the incidents of ordinary deeds to realty. Powell on Actions for Land, § 54; *Coody* v. *Gress Lumber Co.*, 82 *Ga.* 793 (10 S. E. 218); *McRae* v. *Stillwell*, 111 *Ga.* 65 (36 S. E. 604, 55 L. R. A. 513); *McLendon* v. *Finch*, 2 *Ga. App.* 42 (58 S. E. 690), and citations. The fact, however, that a deed to realty is not properly attested does not affect its validity between the parties thereto and their privies. The defect in the attestation relates to the right of recordation and to the method of proof. In the present case, while the deeds conveying the timber rights to the plaintiff were not attested by two witnesses, and therefore were not properly recorded, their execution was not denied, and in fact it was admitted by the de-

fendant that, when it took its subsequent lease covering the same property, it took with actual notice of the existence of this prior conveyance. It follows, therefore, that it was wholly immaterial, so far as any right of the defendant was concerned, that these deeds were not attested as deeds to realty. In the case of *Coody* v. *Gress Lumber Co.,* supra, it was distinctly held that the failure to have attesting witnesses to a deed did not render the instrument void, and that, upon proper proof of its execution, it was admissible in evidence. See also, to the same effect, *Parker* v. *Gortatowsky,* 127 *Ga.* 561 (56 S. E. 846). It is too well settled to require further citation of authority that an improper attestation does not affect the validity of a deed, but only its fitness for record and the method of proving its execution. The deed is still a valid contract and is binding upon any one who subsequently takes with notice of its existence. *Johnson* v. *Jones,* 87 *Ga.* 65 (13 S. E. 261); *Lowe* v. *Allen,* 68 *Ga.* 226; *Gardner* v. *Moore,* 51 *Ga.* 268; *King* v. *Sears,* 91 *Ga.* 577 (18 S. E. 830).

4. The next assignment of error is that the transfer of the White lease, relied upon by the plaintiff in the court below as one of the links in the chain of title, was improperly executed and was invalid, in that the transfer was made by one of two partners in the partnership name and was not signed by the individual members of the firm. This objection is based upon the idea that a deed or lease to take the turpentine from standing trees conveys realty and that the title was vested in the members of the partnership as tenants in common. This objection would be material but for an admission made in the record. The transfer in question was made by J. F. Fender in the name of Fender, Tomblinson & Company and it was admitted that the transfer of the lease in question by J. F. Fender was made "for the partnership and by the authority of each member thereof and in the due course of the partnership business." This admission cures the formal defect in the execution of the transfer or assignment, so far as this defendant is concerned, and places in the transferee all the title of the firm as well as of the individual members thereof to the property described in the transfer. In view of this admission it is not necessary to discuss the point raised in the brief of learned counsel for defendant in error that a transfer of the right to take crude turpentine from growing

·trees is in the nature of a usufruct, especially where the transfer is by lease during a period stipulated for a less time than five years, and that this is distinguishable from an alienation of an interest in land.

· 5. It is next objected that this transfer by the parnership of the lease in question to the plaintiff was incompetent to be admitted in evidence, because the transfer was not in fact dated. The failure to date the transfer is not material, in view of the fact that the defendant had actual knowledge of the previous existence of the lease when it took the lease under which it claims. Besides, the parol evidence shows that all of the transfers of the White lease in question were made on the same day, to wit, January 25, 1907, and this was prior to the date of the instrument under which the defendant claimed its right.

The defendant in the court below offered evidence to prove that there ·was a parol agreement, before the leases were signed and the transfer made to the plaintiff, that the boxing of the timber should commence at once, and this testimony was excluded. There was no effort to show that the time limit was left out of the contract, either by accident or mistake. In the absence of the time limit the law would give the lessee a reasonable time within which to exercise its rights under the lease, the reasonable time being a question of fact to be determined by the jury. The rule laid down on this subject as to what would be a reasonable time would be dependent altogether upon the local conditions and the peculiar circumstances of each case. *McRae* v. *Stillwell,* supra; *Lufburrow* v. *Everett,* 113 *Ga.* 1056 ·(39 S. E. 436); *Goette* 'v. *Lane,* 111 *Ga.* 400 (36 S. E. 758). Besides, it further appeared from the leases to previous grantees, under which plaintiff in the court below claimed title, that from ·three to four years were allowed for the purpose of working timber for turpentine purposes after the boxing thereof, and that before the expiration of this period of three or four years the alleged trespass by the defendant had been committed.

We have considered all the assignments of error that we think material to be decided, and we conclude that the verdict was right. The plaintiff in error knew that these prior leases were outstanding and in the plaintiff in the court below, and that it had been in the actual exercise of these rights, and we are satisfied

that the verdict, under the evidence, was just, right, and equitable. The defenses relied upon are in the main purely technical. The essential facts are,—that the plaintiff held a prior written contract, under which it had the right to all of the turpentine in the timber on the land in question; that the defendant knew of this prior right, and with this knowledge took conveyances, and under these conveyances as an excuse entered upon the land in question and deprived the plaintiff of a very large amount of the profits which it could have realized under its contract; and that the amount of turpentine which it took from the trees, to which the plaintiff was entitled under its previous contract, was larger than the amount of the verdict which the jury found against it. We are impressed with the view that the defendant in the court below simply took the chance of defeating the rights of the plaintiff on mere technicalities, and in the meantime securing for itself a large amount of turpentine to which it was not equitably entitled, and that, to a certain extent at least, this chance of speculation or profit has been reaped by it to the damage of the plaintiff. *Judgment affirmed.*