## HILL v. HILL.

1. The parol promise of a deceased to his sister, that "if she would continue the home [the brother's] as it had been conducted prior to their mother's death, that he would make provisions sufficient for her to live on the remainder of her life," if sufficiently certain and definite with respect to the character of service, the amount of compensation, and the manner in which the compensation was to be made, to constitute a contract, is not capable of being enforced, because its terms are too indefinite and uncertain as to the length or continuance of the service which the sister was to render.

2. So long as the sister performed the services stipulated, she received the compensation agreed; and the suit is not upon a quantum meruit, but for the specific performance of the contract, with an alternative prayer for damages. There was no error in dismissing the petition upon general demurrer.

No. 1234. APRIL 16, 1919.

Equitable petition. Before Judge Crum. Crisp superior court. October 29, 1918.

Miss Lizzie Hill filed her petition for specific performance, with an alternative prayer for damages, against Mrs. Grace Hill. The petition alleged, that J. R. Hill, the brother of the plaintiff, died on October 12, 1916, leaving an estate of real and personal property of the approximate value of $150,000; that Mrs. Grace Hill, the wife and sole heir at law of the deceased, qualified as his administratrix on October 30, 1916, and letters of dismissal were granted to her on October 1, 1917; that the plaintiff's claim was not presented to the administratrix, who had no knowledge of the existence of the claim prior to her discharge; that plaintiff and her brother, J. R. Hill, and her mother lived for some fourteen or fifteen years together; that the mother died on April 8, 1915, and thereafter petitioner contemplated "breaking up housekeeping and dividing her time with her brothers;" that J. R. Hill, at that time a bachelor with no prospect of marriage, prevailed upon your petitioner and agreed and contracted with her, "if she would not break up his home and cease to keep house for him, that is, if she would continue the home as it had been conducted prior to their mother's death, that he would make provisions sufficient for her to live on the remainder of her life;" that, relying upon this agreement, petitioner maintained the home as it had been maintained prior to her mother's death, and "kept the house for J. R. Hill, making a home for him as she had agreed to do, and which was done to the satisfaction of the said J. R. Hill up to the time of his death;" that he failed

to make provision for her according to the understanding afore-said, although he had dictated a will in which plaintiff was named as legatee, but the said J. R. Hill died "unexpectedly and myste-riously," leaving the will unexecuted; that $150 or more per month is necessary to maintain plaintiff in the manner in which she is accustomed to live; that defendant, the widow of J. R. Hill, refused to carry out the agreement of her deceased husband, al-though she is now in possession of all of the estate owned by him at the time of his death; that the estate owes no other debt; and that the defendant is the sole heir at law of J. R. Hill, deceased. The defendant demurred to the petition, upon the grounds, that it stated no cause of action, and no proper party defendant; and that under the allegations, the estate having been fully adminis-tered and the administratrix dismissed, action can not be main-tained against the sole heir at law of the intestate. The demurrer was sustained and the petition dismissed; and the plaintiff ex-cepted.

*Milner & Farkas,* for plaintiff.

*Whipple & McKenzie,* for defendant.

GEORGE, J. (After stating the foregoing facts.) "Contracts under which one of the contracting parties agrees with the other, for a valuable consideration, that he will make a will giving to the other property, either real or personal, have been sustained and enforced in America from the earliest times, and the validity of such contracts seems now to be beyond all doubt." *Banks* v. *How-ard,* 117 *Ga.* 94, 96 (43 S. E. 438), and authorities there cited. Likewise, the validity of contracts under which one of the contract-ing parties agrees with the other, for a valuable consideration, to make provision for the support of the other, have been sustained. The cases generally agree that the parol contract of a decedent to give to one a certain portion of his estate or to make provision for the support of such one in consideration of services rendered can only be enforced when the contract is clearly and satisfactorily established, and when its terms are definite and certain. Graham *v.* Graham, 10 Cas. (34 Pa.) 475; Pollock *v.* Ray, 4 Norris (85 Pa.) 428; Walls' Appeal, 111 Pa. St. 460 (5 Atl. 220, 56 Am. R. 288). This rule has been applied in this State in like and simi-lar cases. *Pair* v. *Pair,* 147 *Ga.* 754, 757 (95 S. E. 295). In the instant case the plaintiff seeks to have the alleged contract, resting

wholly in parol, specifically performed, not by the administratrix of the estate of the deceased brother, but by his widow and sole heir at law. If she can not have the contract specifically performed, the prayer is for damages. Civil Code, § 4639. Generally, a parol contract upon which specific performance is sought must be certain, definite, and clear, and so precise in its terms that neither party can reasonably misunderstand it. *Miller* v. *Cotten,* 5 *Ga.* 341; *Harper* v. *Kellar,* 110 *Ga.* 420, 423 (35 S. E. 667). The agreement in the instant case, as interpreted by the plaintiff in her petition, is: "if she would continue the [brother's] home as it had been conducted prior to their mother's death, that he [the brother] would make provisions sufficient for her to live on the remainder of her life." If it be conceded that the character of the service to be rendered by the plaintiff, in the light of the allegations of her petition, is sufficiently definite and certain to meet the requirements of the decided cases, and if it also be conceded that the obligation of the brother to make provision for the maintenance of the plaintiff, while vague and indefinite, is yet sufficient to require him to maintain the plaintiff in the manner in which she was accustomed to live, nevertheless a material term of the contract, if not the most material term of the contract, is left in a state of entire uncertainty, that is, the length or term of service during which the plaintiff was to "continue the home as it had been conducted prior to their mother's death." How long was she to thus continue the home? One month, one year, until marriage, or during the life of her brother? Giving to the language of the petition a literal interpretation, it is entirely impossible to answer this important question. It is true that an implied meaning may be reasoned out that the plaintiff was to thus continue the home for the brother so long as he lived. A resort to inference, which in this case is mere speculation as to the real meaning of the parties, is necessary, however, in order to arrive at this conclusion. At the time of the making of the alleged contract the brother was a bachelor with no prospect of marriage. When in fact he did marry is not stated in the petition. The mother died on April 8, 1915, and the brother died on October 12, 1916. Sometime after the death of the mother he had in fact married, because the suit is brought against his widow and sole heir at law. A breach of the contract is alleged. Let it be assumed that prior to his death and on the date of his marriage

he breached the contract. What would have been the rights of the plaintiff? Could she, in consideration of the full performance of the contract on her part to the date of its breach, have compelled specific performance of the contract according to its terms; that is, could she have compelled the brother to make "provisions sufficient for her to live on the remainder of her life?" While the contract fixes, as we have conceded, "a species of compensation," and while the character of the service to be rendered by the plaintiff is sufficiently indicated to meet the requirements of the decided cases, we think the failure to specifically provide the length or continuance of the service which the plaintiff was to render precludes recovery by the plaintiff, except upon a quantum meruit for services actually rendered. It is immaterial that she did perform the services until the death of her brother. That is a mere incident. The petition, so far as the allegations go, discloses that she was provided for so long as she rendered the services; and that being true, we are of the opinion that the general demurrer to the petition was properly sustained.

The contract considered in Wall's Appeal, supra, is much like the contract in the instant case: "Her [the appellant's] aunt had been beating her, and her mother came in and she said she would taker her away; that she would not have her daughter treated in that way; that she had been made a slave of all her life ever since she was there. Her uncle stepped up and said if she would let her stay that things would be different; that she would have a good home as long as he lived, and at his death he would provide for her; that she should never want as long as she lived. Annie's mother agreed to let her stay, and she stayed until she was married." Mr. Justice Green, speaking for the court, said: "The literal meaning of these words leaves the contract upon which the claim is founded in a state of entire uncertainty in its most material part, and that is as to the length or continuance of the service which the appellant was to render. How long was she to stay? Was it one month, one year, until her marriage, or during the life of the uncle? It is simply impossible to answer this question. A species of compensation is alleged to have been fixed, to wit, a good home as long as he lived, and a provision for her at his death, so that she would never want as long as she lived. Supposing this rather indefinite compensation to be sufficiently certain to abide

the test or the decisions, what was to be done by the appellant in order to entitle her to it? Admittedly she was to render service, but how much service? Just here is the difficulty. The contract itself ought either to specify the amount of service to be rendered, or at least ought to afford the means of ascertaining or defining with some sort of precision the consideration which was to be given for the compensation claimed. If this is not done, the law has no standard by which to measure the performance by the claimant of her part of the contract. Where such is the case the alleged contract is hopelessly uncertain and cannot be enforced." It is also to be noted that the alleged contract does not state how, that is, in what manner the provision for the support and maintenance of the plaintiff was to be made. It is true that in the case of Best *v.* Garlapp, 69 Neb. 811 (96 N. W. 641, 99 N. W. 837, 5 Ann. Cas. 491), the court in effect held that a promise to leave property in return for support or service need not specify how title to the property is to become vested in the promisee, but it is sufficient if the contract clearly discloses an intention to give the property as compensation. While we deem it of some importance to specify, in a case of this character, whether the provision is to be made by deed, by will, or by the payment of money, nevertheless we rest our decision upon the conclusion already reached. We therefore find it unnecessary to discuss any other term or provision of the alleged contract, or to rule upon the other grounds of the demurrer urged in the court below.

*Judgment affirmed. All the Justices concur.*